### J. R. Harrington et al. v. H. B. Claflin & Co.

Decided January 4, 1902.

1.—Notes—Default as Maturity—Election of Holder—Limitations.

Where each of a series of notes stipulated that a failure to pay it should, at the election of the holder, mature all the notes, the failure to pay the first note did not of itself mature the others, but the filing of suit on all the notes, after default in payment of the first, matured them all, and where such suit was dismissed and another suit was brought on the second and subsequent notes within four years after the filing of the first suit, limitation was not a bar thereto.

2.—Fraud—Issues—Deed or Mortgage.

Where the jury in answer to the special issues submitted found that defendant's wife was induced to sign the conveyance of homestead property in question by his representations that he could thereby pay off all his debts and buy the property back at a profit, that but for this she would not have signed, and that defendant was requested by the plaintiffs to secure his wife's signature to the conveyance, this did not show that defendant and his wife were induced to execute the conveyance by fraud, the jury having further found that the conveyance was an absolute deed and not a mortgage.

3.—Evidence—Impeachment—Collateral Matter.

A witness can not be impeached by a single transaction tending to show a want of integrity on his part where such transaction is not material to any issue in the case.

4.—Same—Notary—Explanation of Deed to Wife.

Where defendant's wife testified that she would not have executed the deed had she 'known or believed it was an absolute conveyance, testimony by the notary who took the wife's acknowledgment was admissible in rebuttal to show that he explained the instrument to her, informing her that it was an absolute deed, and that she seemed to understand.

Appeal from Hill. Tried below before Hon. William Poindexter.

*Jo Abbott* and *A. P. McKinnon,* for appellants.

*B. D. Tarlton* and *W. C. Morrow,* for appellees.

BOOKHOUT, Associate Justice.—This suit was instituted in the District Court of Hill County, Texas, on the 24th day of April, 1894, on five promissory notes executed by J. R. Harrington to A. J. Soloman and M. N. Rosenthal, or order, on the 26th day of February, 1889. The first note, for the sum of $947.70, was due November 15, 1889; the other four notes, each for the sum of $947.71, matured respectively November 15, 1890, 1891, 1892, and 1893, each drawing 10 per cent

interest from maturity, and 10 per cent attorney fees, etc.   Said five notes purport on their face to have been given in consideration of 200 acres of land situated in Hill County, Texas, the land being fully de-scribed in H. B. Claflin & Co.'s first amended petition.

Defendants plead, first, that the notes sued on were barred by the four years statute of limitation.   Second, that the 200 acres of land described in the plaintiff's amended petition was their homestead. Third, that the deed of February 20, 1889, from Harrington and wife to Soloman and Rosenthal was not intended as an absolute conveyance, but as a mortgage to secure an existing debt.   Fourth, that the execu-tion of said deed by Mrs. Harrington was procured by fraud and deceit practiced upon her by her husband and Rosenthal.   Fifth, that J. R. Harrington was a very old man, and that he was misled, deceived and overreached. by false and fraudulent representations of Rosenthal.

On the trial the jury returned answers to special issues, on which the court rendered a judgment for Claflin & Co. for $7515.87, and a decree foreclosing the lien on the 200 acres of land, from which judgment this appeal is prosecuted.

The court submitted the case to the jury on special issues.   The. fol-lowing are the questions submitted and the answers of the jury:

"Question 1:   Was the deed of date February 20, 1889, intended as an absolute deed, a conditional deed, or a mortgage?   You will answer this question positively and plainly.

"Answer:   The deed of February 20, 1889, was intended as an abso-lute deed.

"Question 2:   Did the defendant, J. R. Harrington, make any repre-sentations or statements to his wife, T. N. Harrington, in order to in-duce her to sign the instrument purporting to be a deed of date Febru-ary 20, 1889?   You will answer this question, yes or no.

"Answer:   Yes.

"Question 3:   If you have answered 'yes' to the above question, then state what statement or representations he made to his wife.

"Answer:   J. R. Harrington went to his wife and stated that by mak-ing this trade he could pay his debts and could get the homestead back for $500 less than they would give him for it, and that the deal would be all right.

"Question 4:   If you have answered question No. 2 'yes,' and in an-swer to question No. 3 have stated what representations J. R. Harring-ton made to his wife in order to induce her to sign said instrument, then you will answer this question:   Did M. N. Rosenthal induce J. R. Har-rington to make said representations to his wife for the purpose of ob-taining her signature and acknowledgment to said instrument?

"Answer:   M. N. Rosenthal asked J. R. Harrington to get his wife to sign the instrument.

"Question 5:   If you have answered that Rosenthal induced J. R. Harrington to make said representations to his wife, then you will

answer this question: Would Mrs. Harrington have signed said instrument if said representations had not been made?

"Answer: No.

"Question 6: Were the notes sued on placed in the American National Bank at Waco, and the Waco State Bank, of Waco, and if so, when were they placed in said bank and by whom?

"Answer: Yes; the notes were placed in the American National Bank and the Waco State Bank, of Waco, Texas, on the 13th or 14th of October, 1889, by Soloman and Rosenthal.

"Question 7: If you have found that said notes were placed in said banks, and have found when and by whom they were placed there, in answer to the sixth question, then you will answer this question: For what purpose were they placed in said banks? Was there any agreement made at said time? If so, state what such agreement was and who made it, or who were the parties to such agreement?

"Answer: (a) The said notes were placed in the banks as collateral security. (b) Yes. (c) They were intended to secure the indebtedness of Lessing, Soloman & Rosenthal, and the agreement was, that after said banks had been paid, then H. Kempner was to hold said notes till he was paid by Lessing, Soloman & Rosenthal, and then to be held by H. B. Claflin & Co. till they were paid.

"Question 8: Was there any agreement with Lessing, Soloman & Rosenthal that said banks were to hold said notes as security for any debts, and if so, who made the agreement, and when was it made and for what debt?

"Answer: Yes, there was an agreement between the Waco banks and Lessing, Soloman & Rosenthal, that after said banks had been paid their claims the notes should be turned over to H. Kempner. This agreement was made about October 13 or 14, 1889.

"Question 9: Was there any agreement between H. Kempner and Lessing, Soloman & Rosenthal with reference to the Waco banks holding said notes as security for the debt of H. Kempner against Lessing, Soloman & Rosenthal, and if so, state the date of such agreement, and what the agreement was?

"Answer: There was. Lessing, Soloman & Rosenthal agreed, about the 13th or 14th of October, 1889, that after the Waco banks had been paid that they should turn over the said notes to H. Kempner, he to hold them till he was paid; and then turn them over to H. B. Claflin & Co., of New York.

"Question 10: If in answer to question No. 9 you have found that there was such an agreement, and have stated its date and terms, then you will answer this question: Was the firm of Lessing, Soloman & Rosenthal at said time indebted to H. Kempner?

"Answer: The evidence shows they were.

"Question 11: If in answer to question No. 10 you have found and stated that the firm of Lessing, Soloman & Rosenthal were indebted to

H. Kempner at said time mentioned in said question, then you will answer this question: Has the debt of H. Kempner been paid? If so, when and by whom?

"Answer: The debt of H. Kempner was paid by H. B. Claflin & Co. in the spring of 1890.

"Question 12: If you have found that the instrument of date February 20, 1889, purporting on its face to be a deed executed by J. R. Harrington and wife to Soloman and Rosenthal, was a mortgage and not a deed; and if you have further found that said notes were placed with said banks at Waco to be held by the banks as security for the debt of H. Kempner against the firm of Lessing, Soloman & Rosenthal, then you will state whether or not at the time said notes were placed with said banks as security for the debt of H. Kempner, the said Kempner knew or had any knowledge that said security, of date February 20, 1889, was a mortgage and not a deed?

"Answer: Nothing shows that H. Kempner knew or had any knowledge that the said security was a mortgage and not a deed.

"Question 13: Was the firm of Lessing, Soloman & Rosenthal indebted to the plaintiff H. B. Claflin & Co. during the years 1889 and 1890?

"Answer: The evidence shows that Lessing, Soloman & Rosenthal were indebted to H. B. Claflin & Co. in 1889 and 1890.

"Question 14: When did the plaintiff, H. B. Claflin & Co., obtain possession of the notes sued upon, and from whom did they obtain such possession of such notes, and for what purpose did they come into possession of such notes?

"Answer: In the spring of 1890 from the banks of Waco, by an order from H. Kempner for the purpose of obtaining the control and getting the possession of all the collaterals that H. Kempner held against Lessing, Soloman & Rosenthal.

"Question 15: Did said Waco banks hold the notes sued on as security for the debt of H. B. Claflin & Co. against Lessing, Soloman & Rosenthal? If so, state when and by whom the agreement by which the said banks were to hold such notes as security for the claims and debts of H. B Claflin & Co. was made, and what such agreement was. Give its terms. If you can't state the exact date of such agreement, then state whether it was before or after November 19, 1889.

"Answer: The notes were held by the Waco bank aforesaid to secure the indebtedness of H. B. Claflin & Co. after said banks and H. Kempner were paid, on an agreement made before November 19, 1889.

"Question 16: Did H. B. Claflin & Co. ever have in their hands sufficient property and collaterals of Lessing, Soloman & Rosenthal's to pay the indebtedness of said Lessing, Soloman & Rosenthal to the said H. B. Claflin & Co.?

"Answer: The evidence shows they did not.

"Question 17: Has the debt of H. B. Claflin & Co. against Lessing, Soloman & Rosenthal ever been paid?

"Answer: The evidence shows that the debt of H. B. Claflin & Co. against Lessing, Soloman & Rosenthal has never been paid in full."

There was evidence to sustain these findings. In deference to the verdict we adopt the above findings and such additional findings as are contained in the opinion.

*Conclusions of Law.*—1. It is contended that the court erred in refusing to reform the judgment and render judgment for the defendants for the reason that the notes sued on were barred by the statute of limitations of four years. The notes were dated February 26, 1889, and the first matured November 15, 1889, and one each year thereafter. The notes contained the following election clause: "It is understood and agreed that failure to pay this note or any installment of interest thereon when due, shall, at the election of the holder of them, or any of them, mature all notes this day given by me to A. J. Soloman and M. N. Rosenthal in payment of said property." The first note matured and was not paid. The holder of the notes, on November 5, 1890, instituted suit thereon in the United States Circuit Court at Waco. That suit was dismissed and the present suit was filed April 24, 1894. The first note which matured November 15, 1889, was admittedly barred, and no judgment was had thereon. The failure to pay the first note maturing did not ipso facto mature the remainder of the notes. Whether such failure should have the effect of maturing the remainder of the notes depended upon the exercise by the holder of his option or election to declare them due by suit or otherwise. This election was not exercised until the suit was instituted in the United States court, which was November 5, 1890, and the statute was not put into operation as to the remainder of the notes until that date, which was less than four years prior to the institution of this suit. Plow Co. v. Webb, 141 U. S., 616; B. and L. Assn. v. Stewart, 61 S. W. Rep., 387; Wood on Lim., p. 296; Harrold v. Warren, 46 S. W. Rep., 657.

2. It is insisted that the second, third, and fifth answers of the jury to the questions propounded by the court showed that the making of the deed of February 20, 1889, was not a voluntary act of Mrs. Harrington, but that she was induced to execute the same at the instance and upon the representation of her husband, and that her husband induced her to sign at the instigation of Rosenthal, who knew that Mrs. Harrington had refused to sign any more papers. In the second clause of the court's charge the jury were instructed that they would find said deed to be what it purported to be, that is, an absolute deed, unless they should believe from a preponderance of the evidence that it was, at the time of its execution intended by all parties thereto to be a mortgage. The court, in the fifth clause of its charge, instructed the jury fully as to what would constitute a mortgage. The jury found in answer to question number 1, that the deed of February 20, 1889, was intended as an absolute deed. The answers of the jury to questions numbers 2, 3, 4, and 5, when considered in the light of the charge, show that the instrument,

of February 20, 1889, was not intended as a mortgage. It is contended that it is apparent from the evidence that Rosenthal perpetrated a fraud upon Harrington and wife in procuring the execution of the deed. The answer to question number 4, that Rosenthal asked Harrington to get his wife to sign the instrument, is not a finding that Rosenthal fraudulently secured Mrs. Harrington's signature to the deed, nor does it show that he suggested any fraudulent means to Mr. Harrington by which he was to procure his wife's signature to the deed. The jury nowhere found that Rosenthal perpetrated a fraud upon either Harrington or his wife. The answer to question number 3 negatives the suggestion that Rosenthal suggested any fraudulent means to secure Mrs. Harrington's signature to the deed. The evidence was sufficient to justify the jury in finding that neither Harrington nor his wife was induced to execute the instrument by reason of any fraud on the part of Rosenthal. The evidence further justified them in finding that the instrument was an absolute deed. The issue as made by the pleadings was, whether the deed of February 20, 1889, was what it purported to be, an absolute deed, or whether it was a mortgage. The jury found it to be an absolute deed. If it could be said that by the answer to question number 3 Harrington and wife contemplated they should have the right of repurchasing the property at $500 less than they sold it for, this would not evidence a mortgage. The debt of Lessing, Soloman & Rosenthal was extinguished when the deed was made. Five days thereafter Harrington went to Waco and repurchased the property at $500 less than he sold it for, the notes herein sued on being the consideration for said repurchase. Had the issue been raised that these transactions evidenced a conditional sale of the homestead and the jury so found it seems that this would not have defeated the conveyance. Astugueville v. Loustaunau, 61 Texas, 233; Andrews v. Bonham, 46 S. W. Rep., 902.

3. It is insisted that the answers of the jury to questions numbers 7, 9 and 15 are against the weight of the evidence, in that the evidence shows that the notes were deposited in the banks as collateral security for the Lessing, Soloman & Rosenthal indebtedness to the banks, with the understanding that when the banks were paid they were to go to H. Kempner, of Galveston, Texas, and the evidence does not show that they were to ultimately go to H. B. Claflin & Co. There was evidence both ways on this issue. The evidence was sufficient to justify the jury in finding as they did in answer to said questions numbers 7, 9, and 15, in effect, that the notes were deposited with the banks as collateral security for the indebtedness of Lessing, Soloman & Rosenthal to the banks, with the understanding that when the debts of the banks were paid they were to go to H. Kempner, of Galveston, and, when his debt was paid, to H. B. Claflin & Co., the appellee. Claflin v. Harrington, 56 S. W. Rep., 370.

4. Appellants contend, in their third and fourth assignments of error, that the court erred in excluding the fourth cross-interrogatory

of the witness A. J. Soloman, and his refusal to answer said interrogatory, for the reason that the refusal of said witness to answer said interrogatory was a circumstance tending to impeach the character of said witness, and was material in that it affected the weight to be given to the other evidence of said witness. The interrogatory referred to is as follows: "Were Lessing, Soloman & Rosenthal insolvent and in a failing condition on the date of your pretented purchase of said notes?" Neither Soloman nor Rosenthal was a party to this suit. The evidence shows that John Claflin and George Armstrong were permitted to testify and did testify that Lessing, Soloman & Rosenthal were not insolvent at the time plaintiff purchased the notes. The uncontroverted evidence is that Lessing, Soloman & Rosenthal did fail to pay appellees and still owe them a large amount. The witnesses Claflin and Armstrong stated in answer to cross-interrogatory number 4, in effect, that the reason that their debt was not paid was on account of Rosenthal and Soloman appropriating the proceeds of a large quantity of cotton to their own use. This was an attempt to impeach a witness by a single transaction tending to show a want of integrity on the part of the witness, when the transaction itself was not material to any issue in the case. The evidence was not admissible for the purpose of impeaching the witness.

5. Appellants in their fifth assignment of error complain of the action of the court in permitting the witness G. D. Tarlton to testify as to what occurred between himself as notary and Mrs. Harrington at the time he took her acknowledgment. Mrs. Harrington had testified that she would not have executed said deed if she had known, or believed, that she was conveying her land absolutely to said Soloman and Rosenthal. The witness Tarlton states that he explained to her the instrument, and told her that it was an absolute deed to the property; that she seemed to understand what was said to her, and he further testified that she acknowledged the deed. His testimony we think was in rebuttal of what Mrs. Harrington had testified to, and there was no error in admitting the same. It did not add to or strengthen the certificate of the notary, nor did it tend to impeach it.

6. Appellants' seventh assignment of error complains of the action of the court in refusing to submit their first special issue requested by defendant, reading as follows: "State whether or not Mrs. Harrington was induced to sign the deed from J. R. Harrington and herself to Soloman and Rosenthal by reason of the fraudulent acts or conduct of her husband, J. R. Harrington." The special charge requested by appellants reads: "In connection with the submission of the foregoing special issue number 1, the defendants ask the court to instruct the jury that fraud, like any other fact, may be proved by circumstantial evidence, and that it is not necessary that the party perpetrating the fraud intended, at the time, to perpetrate a fraud; but, if you find from the evidence that representations in this case, if any, were made by J. R. Harrington to his wife, and that said representations had the effect to

·cause her to believe that the execution of the deed in question was for a purpose other than an absolute conveyance of the land in question, and she in fact believed from said representations that said conveyance was for a purpose other than an absolute conveyance, then in law his conduct to his wife would be fraudulent." The defendants pleaded, in substance, that Harrington told his wife they would have to give a mortgage on their land; that Rosenthal requested Mrs. Harrington's husband to explain the purpose of making the deed, and she signed the same believing that it was to secure her husband's debts. There is no evidence that Harrington told his wife they would have to give a mortgage on the land; there is no evidence that Rosenthal told Harrington to explain to his wife that the purpose of making the deed was to give a mortgage on their homestead, or to secure his indebtedness. The evidence did not sustain the issue of fraud upon Mrs. Harrington, as charged in defendant's pleading, and for this reason the court did not err in refusing to submit said special issue and special charge. The evidence does not show that Rosenthal induced Harrington to perpetrate a fraud upon Mrs. Harrington. Nor does it show that Rosenthal had any knowledge that Harrington had perpetrated a fraud upon his wife. The question submitted by the court fairly covered all the issues raised by the pleadings and evidence.

We have carefully examined the several assignments of error not discussed, and now conclude that they present no reversible error.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.