## NEGOCIACION AGRICOLA Y GANADERA DE SAN ENRIQUE, S. A., v. LOVE et al. (No. 1625.)

(Court of Civil Appeals of Texas. Amarillo. March 17, 1920.)

**1. Master and servant ⟨⟩80(4)—Petition for salary and advancements held to state cause of action.**

Petition by the American foreman of a Mexican ranch, owned by a Mexican corporation, to recover salary, moneys advanced, etc., *held* not subject to general exception, but rather to state a cause of action.

**2. Pleading ⟨⟩18—Pleader must state facts with certainty and accuracy.**

It is duty of pleader to state facts on which he relies to support cause of action or defense with such certainty and accuracy as will identify transaction on which reliance for recovery is based, so as to afford other party a reasonable opportunity for investigation with a view to meeting the issue.

**3. Pleading ⟨⟩228—Petition of ranch foreman subject to exception for generality in its claims for advancements and commissions.**

In action by American foreman of a Mexican ranch, owned by a Mexican company, to recover salary, advancements, etc., allegations in support of plaintiff's claim for moneys advanced to purchase cattle, and for an amount as commission on sales from the ranch, *held* subject to special exception on account of their generality, in the absence of allegation that plaintiff was unable to furnish details or further information as to the advancements to purchase cattle, and in presence of mere allegation he was unable to make a detailed statement of sales from ranch.

**4. Appeal and error ⟨⟩233(2)—Not necessary to renew exceptions to petition when trial amendment was filed.**

Where plaintiff's recovery on a claim for advancements and commissions was wholly by virtue of allegations in the petition as they existed at the time of filing of trial amendment, it was not necessary that defendant should have renewed exceptions to the petition when the trial amendment was filed in order to complain of too great generality in its allegations relative to advancements by and commissions to plaintiff.

**5. Evidence ⟨⟩106(1), 475—Character evidence must be confined to proof of reputation, and opinion not admissible.**

When it becomes permissible to offer evidence as to good character, such evidence must be confined to proof of general reputation, and the individual opinion of witnesses is not admissible.

**6. Evidence ⟨⟩215(3)—Letter stating opinion as to honesty not admission against subsequent assertion of dishonesty.**

Defendant's letter stating his opinion that plaintiff was a person completely honorable and able to perform any contract he might make, etc., not being an admission of a matter

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of fact, *held* inadmissible in plaintiff's action, not being inconsistent with a subsequent assertion by defendant of plaintiff's dishonesty in a specific subsequent transaction.

**7. Evidence ☞445(6)—Provision for compensation in written contract not variable by proof of subsequent oral agreement.**

Where there was a definite provision covering compensation of a ranch foreman in the original contract pleaded by him in his action for salary and advances, in the absence of specific allegations of change of such provision by an oral agreement made subsequently, there was no basis in the pleadings for introduction in evidence by plaintiff of an alleged oral agreement changing the written contract as to compensation.

**8. Master and servant ☞70(1)—Risk held consideration to support agreement for increased compensation.**

Where a revolution in Mexico resulted in execution of the president of that country, a stockholder in a ranch company, the enlarged duties, responsibilities, and dangers of the American foreman of the ranch in his endeavors to remove cattle thereon from the country, and to avoid confiscations, *held* sufficient consideration to support agreement by Mexican ranch company and stockholders for increased compensation to foreman.

**9. Master and servant ☞80(5)—Allegation of individual and corporate contract not supported by evidence of corporate contract alone.**

Under the rules of common-law pleading there would be a variance preventing recovery between allegations that a contract of employment was made between plaintiff on the one side and an individual and a corporate defendant on the other, and that services were rendered for such parties, and evidence that the contracts were with the corporate defendant alone, and the services likewise rendered for it alone.

**10. Evidence ☞472(1)—Testimony as to meaning of letter held inadmissible to show approval of acts of corporate agent.**

In an action by the American foreman of a Mexican ranch to recover salary, advancements, etc., testimony as to the meaning of a letter from a stockholder in the Mexican corporation owning the ranch to plaintiff foreman *held* inadmissible to show knowledge and approval by the company of the foreman's borrowing money from an individual to buy cattle, as the various letters and telegrams should have been introduced in evidence, and the jury left to determine what was meant by a reference in the letter.

**11. Evidence ☞244(7)—Affidavit of foreman's assistant without knowledge of stockholders inadmissible against them and company as admission.**

In an action by the American foreman of a Mexican ranch for salary and advancements, affidavit of the foreman's assistant, attached to a claim against the Mexican government, prepared by the foreman at the suggestion of stockholders in the ranch company, for compensation for loss of cattle taken by various military commanders and raiders, *held* inadmissible, stockholders not having been shown to have had personal knowledge of truth or falsity of its statements.

**12. Evidence ☞271(19)—Correspondence between defendant and third party after controversy inadmissible as self-serving.**

Correspondence between a defendant and a third party, after the controversy with plaintiff had arisen, *held* inadmissible as a self-serving declaration of defendant.

**13. Witnesses, ☞344(5), 352—No impeachment by evidence of dishonesty in particular transaction unconnected with issues.**

A witness cannot be impeached by evidence of dishonesty in a particular transaction not connected with any issue in the case, and impeaching evidence, a statement in a letter, not itself proving any wrongdoing on the part of the witness, the charge being made merely on report of others, was objectionable.

**14. Principal and agent ☞145(2)—No recovery against undisclosed principal on negotiable instrument.**

Recovery may not be had on a negotiable instrument against an undisclosed principal in no way referred to on the face of the instrument itself.

**15. Master and servant ☞73(3)—Ranch foreman keeping own cattle with knowledge of company not deprived of compensation.**

In an action by the American foreman of a Mexican ranch to recover salary, advancements for the purchase of cattle, etc., testimony that the foreman had some cattle of his own on the ranch, to the knowledge of the president of the ranch company and other stockholders, did not conclusively show the foreman was guilty of such misconduct as to deprive him of all right to compensation.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by M. A. Love and others against Negociacion Agricola y Ganadera de San Enrique, S. A., a Mexican corporation, Alfonso Madero, and Otto R. Winter. From the judgment defendant company appeals. Reversed as to the company; affirmed as to defendant Madero.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, and Thomas, Milam & Touchstone, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellees.

BOYCE, J. This suit was brought by M. A. Love against Negociacion Agricola y Ganadera de San Enrique, S. A., a Mexican corporation, which we shall call the San Enrique Company, Alfonso Madero, and Otto R. Winter, to recover the value of services performed and commissions earned by the said Otto R. Winter, under employment by the defendants, the San Enrique Company and Alfonso

Madero, to manage for them a hacienda, which we shall call the San Enrique ranch, in the republic of Mexico; also to recover for advances made by the said Otto R. Winter to his employers, and the balance on a certain loan payable to one Crotty, made in the name of said Winter, but which was alleged to have been made for the benefit of his said employers. The plaintiff sued as assignee of the said Otto R. Winter and Crotty. The case was submitted to a jury on special issues, and on their verdict judgment was rendered for the plaintiff against the San Enrique Company for the sum of $21,096.46 on account of salary, commissions earned, and advances made by the said Winter, and against the San Enrique Company and Otto R. Winter jointly and severally for the further sum of $13,256.35 on account of the loan made by Crotty, Winter recovering judgment over against the company in the event he should be compelled to pay said last-named amount. Plaintiff took nothing against the defendant Alfonso Madero. The appeal is by the San Enrique Company from this judgment.

The record is voluminous. The appellant, in a brief containing over 300 pages of printed matter, presents many assignments of error. The appellees' brief is almost equally voluminous. We will condense as much as possible, disposing of the assignments by general discussion in many instances, yet the opinion will be of some length.

As numerous questions are raised based on the pleadings, we will begin the consideration of the case by a somewhat detailed statement of the pleadings. The petition consisted of three counts. We will condense this, employing the same subdivisions as adopted by the plaintiff. The following is the substance of the allegations of the first count:

(1) That in April, 1912, the San Enrique Company and Alfonso Madero, owners of the San Enrique ranch, in Mexico, employed Otto R. Winter to move onto said ranch and manage and handle the same as his own, to take charge, through his wife, of the supply store, and generally to buy and sell for the benefit of the ranch any and all property, receiving and disbursing the proceeds thereof for the benefit of his employers; that it was contemplated that the said Winter should have the right to borrow money for the purpose of purchasing stock for said ranch, as his discretion might approve; that the plaintiff is unable to state whether the said contract of April, 1912, was verbal or in writing, but alleges, on information, that the same was in writing and in possession of the defendants other than Winter; that thereafter, in January, 1913, by agreement between the defendants, "additional duties and obligations were placed upon said Winter by the other defendants, and additional powers conferred upon him, to wit," that the apparent title to the live stock on the ranch was placed in Winter as full owner thereof and he agreed to and was given full authority to handle the same and the supply store in the same manner as if said property were fully owned by him, with the right to buy and sell stock, borrow money, etc., and that if said powers were not expressly given him he did, with the knowledge and approval of his said employers, exercise the same; that the plaintiff is unable to state whether said additional agreements were evidenced by written contract, but upon belief says that they were in writing, and that if such agreements were evidenced, in whole or in part, by written instruments, the defendants other than Winter have possession thereof.

(2) That the San Enrique Company and Alfonso Madero, as compensation for the services to be rendered by the said Otto R. Winter under his "employments," contracted and agreed by said "contracts" to pay him a salary of $75 per month, to make reasonable compensation to him for his wife's services in managing the supply store, to pay him a commission of 15 per cent. upon all sales of cattle and produce from said ranch, and to pay all moneys borrowed by him or advanced by him for the use of said business.

(4) That the said Winter entered upon the performance of his duties in April, 1912, and for a period of nearly four years rendered constant and valuable services to his employers at great personal risk, danger, and hardship; that his services terminated about January 1, 1916, and that during said interval his employers became indebted to him under said contracts in the following sums of money (we quote this statement from the pleading):

Salary for 46 months from April, 1912, at
  the rate of $75 per month...................$ 3,450 00
Personal money of said Winter, advanced
  and used for the benefit of his codefend-
  ants in purchasing cattle for their use
  and account, said advancement made
  about September, 1914......................  5,137 13
Balance due upon loan of $12,000 borrowed
  by said Winter in his name, but for the
  use, account, and benefit of his codefend-
  ants, from J. W. Crotty, as hereinafter
  alleged, such balance aggregating, be-
  sides interest and attorneys' fees........  9,500 00
Commission due said Winter on sales of
  stock and produce made by him for the
  use and benefit of his codefendants, said
  sales aggregating $145,412.72 ..............  21,812 00
Compensation for handling supply store for
  two years from April, 1912, to April, 1914,
  reasonably worth $750 per year..........  1,500 00

That to the aggregate of said sums should be added interest upon the balance due on the Crotty loan and attorney's fees thereon; that plaintiff is unable to give in detail the dates and amounts of the sales from the ranch, because such information had been seized by his employers.

(5) That the plaintiff is unable to produce a detailed statement of such sales upon which he is entitled to receive commission; that such information is in the possession of the defendants, they having all books and vouchers showing such details. Upon information it is charged that the San Enrique Company and Alfonso Madero not only have their own records, but have fraudulently and wrongfully taken possession of the records and data belonging to Otto R. Winter, and decline to allow said Winter or plaintiff access to such information, and notice is given to said defendants to produce such data on the trial.

(7) That in the course of the discharge of his duties the said Winter about November 2, 1914, borrowed $12,000 from J. W. Crotty, executing and delivering to said Crotty his note therefor, bearing interest at the rate of 8 per cent. per annum, and providing for payment of 10 per cent. attorney's fees for collection; that with said funds cattle were bought for the San Enrique ranch, and that the sum of $2,500 had been paid on said note on March 10, 1915; that the said Winter reported to his employers the fact of his having borrowed said funds and executed said note therefor, and that the said defendants ratified said acts and assumed payment of said indebtedness.

(8) That Winter, in order to secure the said Crotty in the payment of the balance due him on said note, assigned to the said Crotty all of said Winter's claims against his employers, and that thereafter the said Crotty assigned and delivered all of said claims, as well as his own claim for the balance of the indebtedness represented by said $12,000 note, to plaintiff.

### Second count:

Under this count plaintiff adopts all of the allegations of the first count, except the averments in section 2, as to the amount of the commission agreed to be paid upon sales, and in this connection alleges that the employers' claim that the said commission was to be on a basis of 12½ per cent., which amount he seeks in the alternative to recover in the event it should be found that said contract provided for commission at said rate instead of at the rate of 15 per cent.

### Third count:

After the cause had been on trial for several days defendants San Enrique Company and Alfonso Madero produced in court the written contract of April, 1912. This was in Spanish. Translated, it reads as follows:

"April 15, 1912.
"Mr. Otto R. Winter, Present.

"Dear Sir: I hereby make known that by these presents you, in your own behalf and representation, and I, in representation and behalf of the Negociacion Agricola y Gandera de San Enrique, S. A., have agreed upon the following: You are to lend your services to the Negociacion, which I represent, as administrator of the land or house property, taking under your charge the agriculture and cattle on the place, to the attention of which you bind yourself to devote all of your time. The company on its part binds itself to pay you monthly the sum of $150.00 (one hundred and fifty pesos), and to allow you, when liquidation is made at the end of every year 12½% of the net profits. The agreement to which the present letter refers shall be for the term of five agricultural years, or, in other words, until the crop corresponding to the last year has been liquidated. Naturally, if there is a mutual arrangement entered into, this agreement can be extended for an indefinite term. At the first meeting of the board of administration of the negociacion Mr. Alfonso Madero binds himself to advise the board of this agreement, in order that same may be ratified and put in due form in the most convenient manner.

"In testimony whereof we sign this in duplicate.

"Yours truly,
"[Signed]                Alfonso Madero.
                    "Otto R. Winter.
                        "[Two flourishes.]"

When this contract was offered in evidence the plaintiff filed a trial amendment, which constitutes the "third count" of his petition. It adopts, except as thereby modified, the allegations of the first count; and alleges, "in lieu of sections 2 and 4 of said petition," that by the terms of said contract of employment of April, 1912, the said Otto R. Winter was to receive compensation as therein specified, a copy of said contract being attached to the amendment; that the said contract, unless superseded and terminated by the new agreement of employment of January, 1913, continued in force throughout the term of service, and the defendants Madero and San Enrique Company became liable in pursuance to such contract. Section 4 of said trial amendment contains a statement very similar to the allegations of section 4 of the first count, except that it is therein alleged that the net profits of the business during the term of Winter's service were $70,000, of which amount plaintiff sought to recover 12½ per cent. This count contains the following allegation: "That all of the allegations in this count made with respect to such written contract of April, 1912, are made in the alternative, and only in case it be held for any reason that the contract of employment of January or March, 1913, did not terminate and supersede such earlier contract."

The defendants the San Enrique Company and Alfonso Madero answered by general and special exceptions and general and special denial. They specially deny the execution of any such contracts as alleged; they denied the authority of the said Winter to bind them in the execution of the Crotty note, and denied any assumption of its payment. They specially answered that if any such loan had ever been made by Crotty to Winter, and any cattle bought therewith, such transaction was for the private benefit of such parties, with the intent on their part to secretly use the ranch for the purpose of handling such transaction, and that only after conditions had changed, and it became evident that loss would be sustained thereby, did the said Winter claim that such transaction was for the benefit of the San Enrique Company; that if they had ever in any way recognized the Crotty loan as being made for the benefit of the San Enrique Company, such recognition was secured by fraudulent statements in reference thereto made by the said Crotty and Winter. In reference to the alleged contract of 1913, they answered that the defendant company did execute certain instruments at such time, one being a bill of sale, conveying the cattle on the San Enrique ranch to the said Winter, and the other being an option contract to sell the same to him; that

such instruments were executed in view of the political conditions in Mexico, and for the purpose of enabling said Winter as ostensible owner of said cattle, to take them out of Mexico, and market them in the United States for the benefit of the San Enrique Company, but that neither of such contracts was intended to enlarge the previous contracts between the parties. They further specially answered that the San Enrique Company did place the said Winter in charge of its ranch as foreman in April, 1912; that the said Winter sold large quantities of cattle and produce from said ranch for which he has not accounted, and that upon accounting the said Winter would be indebted to the company in an amount exceeding $40,000; that the said Winter, by reason of his infidelity to the interests of his employer, has forfeited his right to any compensation for his services. Wherefore the San Enrique Company prayed that said Winter be required to file an accounting of the transactions had by him as agent of the company, and that it have judgment for the amount alleged to be due it.

The San Enrique Company was a Mexican corporation, whose stockholders were composed largely, if not wholly, of the various members of the Madero family. Francisco Madero, the head of the family, resided in New York and was president of the company. Alfonso Madero, one of his sons, was vice president, and under general instructions from his father, had the more direct management of the details of the business. There were several other sons and daughters of Francisco Madero who were interested in the company. At the time of the execution of the contract one of the sons of Francisco Madero, Francisco I. Madero, was president of the republic of Mexico. In February, 1913, Francisco I. Madero and Gustavo Madero were killed in the revolution which at that time took place, and the other members of the family fled from the republic. In March, 1913, the Maderos called Winter into conference with them in San Antonio, Tex., to determine ways of protecting the property of the San Enrique Company ranch. Several of the Madero brothers were present at this conference. If Alfonso Madero was not personally present he had instructed Emilio Madero to act for him, and such action, taken by the said Emilio Madero and the others present at this conference, was approved by Alfonso Madero and Francisco Madero for the company. The evidence supports the conclusion that it was decided at this conference that it would be best to get the cattle then on the ranch out of Mexico as quickly as possible, and it was thought that, if Winter were made the ostensible owner, it might serve to protect the property from the confiscation and other dangers that menaced all property owned by the Maderos, and might facilitate the movement of the cattle from

Mexico. Accordingly an absolute bill of sale was executed by Emilio Madero conveying the cattle to Winter. Another contract was also signed which was in the form of an agreement to sell said cattle, and which stated that the bill of sale was only executed in view of political conditions, and that no title should pass to Winter except upon payment for said cattle at the rate of $22 per head after they had been brought out of Mexico. The evidence warrants the conclusion that the contract of 1912 was not before the parties at this conference, and it was assumed that it provided that Winter should receive 15 per cent. of the proceeds of sales from the ranch, and it was understood that such was to be his compensation for his further services, and that he was to be given a bonus in addition, the amount of which was not agreed upon. A great many of the cattle were, within a few months following this conference, taken out of Mexico and sold. For the present, it will be sufficient to state that on the conflicting evidence the jury made the following findings of fact: That the contract of April 5, 1912, was changed in March, 1913, and a new agreement made, which was afterwards ratified by the president or vice president of the company, under the terms of which the said Winter was to receive the sum of $75 per month and fifteen per cent. commission on the proceeds of sales from the ranch; that the proceeds of the sales of live stock and farm products made under Winter's employment after said contract amounted to the sum of $72,430.28; that the said Winter borrowed the sum of $12,000 from Crotty for the benefit of the San Enrique Company, and bought cattle therewith, and that the said transaction was approved by Francisco Madero for the company, and he agreed for the company to pay the balance due thereon to the said Crotty; that the said Winter in September, 1914, advanced the sum of $5,137.13 of his own funds with which to buy cattle for the ranch; that the company agreed to pay Mrs. Winter the reasonable value of her personal services in handling the commissary store of the San Enrique Company, and that her services rendered under said contract were of the reasonable value of $730; that there were no net profits realized in the administration of the San Enrique ranch during the services of the said Winter.

[1] We do not think there was any error in overruling the general exception to the plaintiff's petition.

[2-4] We think the special exceptions to the generality of the allegations in support of the claim for $5,137.13, advanced to purchase cattle, and $21,811.90, commission on sales from the ranch, should have been sustained. It is the duty of a pleader to state the facts upon which he relies to support his cause of action or defense with such certain-

ty and accuracy as will identify the very transaction on which reliance for recovery is based, so as to afford the other party a reasonable opportunity for investigation of such matters, with a view to meeting the issue. Caldwell v. Haley, 3 Tex. 317; Townes on Pleading (2d Ed.) 407 et seq. In respect to the first allegations mentioned the defendants had the right to have some information as to when, where, and from whom the said Winter had purchased cattle for their benefit with funds advanced by the said Winter, as alleged, to the end that they might be permitted to make some independent investigation as to the truth of such matter. There was no allegation that the plaintiff was unable to furnish detailed or further information as to this claim, and the plaintiff on the trial did prove by the witness Winter the number of cattle bought with this money, from whom purchased, and all the details thereof. As to the other items, plaintiff did allege that he was unable to make a detailed statement of the sales from the ranch because such information was in possession of the defendants, and that the defendants Madero and San Enrique Company had seized the books and data of the said Otto R. Winter from which such information could be secured. We do not think this is sufficient. It is to be noted that the plaintiff did not state that he could make a fuller, or even an approximate, statement as to such matters. If the plaintiff could not make a detailed statement as to all of such sales, it was at least his duty to make such statement as full as possible. Plaintiff's attorneys and the trial court were bound to have known that the plaintiff would have to produce some more definite and detailed evidence as to the sales made from the ranch than this generality. The allegations should have been sufficient to show what this evidence would be. If the plaintiff had no information as to such facts as would be necessary for him to offer in evidence to make out his case, then he should have asked for an accounting or for a discovery, and proceeded in this way. On the trial it appears that the plaintiff did have detailed information as to all of the larger sales. Most of the cattle were driven across the Rio Grande river and shipped from Laredo to various commission houses, and the said Winter had a book which showed the dates of these various shipments, the number of cattle therein, etc. He also had an account sales from the commission houses. The said Winter also testified as to the approximate value of farm products sold from the ranch. He did the banking business of the ranch in his own name and in that of his wife, with the Laredo National Bank. He produced a full statement of these accounts with the bank, running through several years. The proceeds of the sale of all the cattle, so he testi-

fied, were credited to these accounts, and he went through them and pointed out the various items which he claimed represented the sales of live stock, etc., from the ranch. In fact, as we understand it, the plaintiff made out his case on this claim from evidence that was either in the possession of the attorneys, or accessible through the said Winter, long before the action of the court on these demurrers. It is not necessary to detail here the facts which plaintiff adduced in support of the allegation that Winter's papers were wrongfully taken by the defendants Madero and San Enrique Company. The evidence would warrant a conclusion either way as to the good faith of the said defendants in such matter. In either event, however, some, if not all, of such papers were returned to Winter before the filing of the suit, and with these, and even without them, said Winter had possession of sufficient facts to enable the plaintiff to make a very approximate statement of the matters that he relied on to support this claim. The plaintiff and the said Winter were on friendly relations; in fact, the suit was being prosecuted largely for the benefit of the said Winter, plaintiff having only a small interest in the recovery. It does not appear that the defendants had any specific knowledge of many of the items that were to make up the aggregate of this claim for commission. Of course, the court, at the time the demurrers were overruled, had no information as to these matters that were subsequently developed, but that may be taken into consideration for the purpose of determining whether any harm resulted from the action of the court in overruling them. We think it sufficiently appears that the appellant, by the error of the court in overruling the exceptions, probably was prevented from preparing and presenting its full defense to these claims. The trial amendment did not enlarge or change in any way these allegations. Plaintiff's recovery on the claim for advancements and for commission was by virtue wholly of the allegations in the petition as they existed at the time of the filing of the trial amendment. Under such circumstances, we do not think it was necessary that appellant should have renewed the exceptions when the trial amendment was filed in order to complain of this error.

We do not think there was any error in overruling the other special exceptions presented by the appellant. If there were any technical errors in any of such matters, it sufficiently appears that no harm resulted from such rulings.

[5, 6] The plaintiff in opening his case introduced Otto R. Winter as a witness, and in connection with his examination offered in evidence, over the objection of the appellant, the following letter, written by Alfonso Madero:

"Monterey, Mexico, June 27, 1911.

"To Whom it may Concern: For the present I have the pleasure to recommend amply the bearer, Mr. Otto R. Winter, whom I have known for ample time, and with whom I had the opportunity to trade on various contracts in the interest of artesian wells. He is a person completely honorable and able for any contract, and able to finish any contract he makes in the work that I refer to. The same is in the buying of cattle or any other business of the camp, etc.

"With all consideration,
"[Signed]          Alfonso Madero."

The only theory on which this letter could be admissible would be on the ground that the allegations in the answer put in issue the honesty of the said Winter, and evidence of his character was admissible, and that this letter is to be regarded as an admission of a party to the suit on such issue. If we concede that the first statement in the above proposition is well taken, yet we think the letter was inadmissible. In the first place, when it becomes permissible to offer evidence as to good character, such evidence must be confined to proof of general reputation. The individual opinion of the witnesses as to character of the subject of the inquiry is not admissible. McCormick v. Schtrenck, 59 Tex. Civ. App. 139, 130 S. W. 720; Ayres v. Duprey, 27 Tex. 593, 86 Am. Dec. 657; Jones on Evidence, § 860; Enc. of Evidence, vol. 3, p. 35; Wigmore on Evidence, § 1980 et seq. This letter, if it be regarded as evidence of a witness given on the stand, would be inadmissible under this rule. Necessarily the statement as to the honorable character of Mr. Winter was the expression of an opinion. Character is an inner quality that lies beneath action, and even thought itself. Words and actions may manifest in a way the general quality of the controlling character, and the person thus acquires a reputation. No witness can testify to the hidden character as a fact. But reputation itself is a fact, and evidence of general reputation is admissible as tending to prove character; but under modern authorities individual opinion as to character is not admissible. In the second place, the letter, not being sworn testimony, would, of course, be only admissible as an admission of a party to the suit. Now, according to the most eminent authorities, former statements made by a party to the suit, in respect to facts in issue, are admitted because they tend to discredit such party's present position as being inconsistent therewith. "Thus, in effect and broadly, anything said by the party may be used against him as an admission provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony." Wigmore on Evidence, § 1048. "The statement is admissible if at the time of the trial it is inconsistent with the contention of the party who made it. When a party to a civil action has made admissions of fact material to the issue, they are as a rule admissible against him." Horwitz' Jones on Evidence, vol. 2, p. 363. As we have already seen, Alfonso Madero made no statement of fact, but expressed an opinion. Such opinions are subject to change. The fact that he may have, at the time of the writing of the letter, thought that Otto R. Winter was entirely honorable, and so expressed himself in the letter, is not inconsistent with a subsequent assertion of his dishonesty in a specific transaction had at a subsequent time. The reasons for allowing the introduction of former statements of fact as admissions does not, it seems to us, apply to this character of statement. Plymouth County Bank v. Gilman, 3 S. D. 170, 52 N. W. 869, 44 Am. St. Rep. 782; 1 R. C. L. 481.

[7] Appellant asserts, by various assignments, that the evidence of the oral agreement of March, 1913, to pay Winter 15 per cent. of the proceeds of the sale of the cattle made from the ranch, was inadmissible because varying the terms of the written contract, and that there was no pleading that authorized the introduction of such evidence. We doubt whether the pleading is sufficient to warrant the admission of this evidence. It will be seen from our summary of the pleading that the plaintiff first pleaded the contract of 1912 without stating the compensation agreed upon by its terms, but stating that the contract was in writing. This contract was produced in evidence, and of course is to be taken as controlling the question of compensation up to the time of the agreement of 1913. The plaintiff attempted to plead the changes in the original contract made by the contract of March, 1913. These changes so pleaded were only to the effect that additional duties and obligations were placed upon the said Winter, and that he was granted enlarged powers, but no allegation of change in the agreement for compensation was made. These contracts were also alleged to be in writing, and evidently the bill of sale and purchase contract were what the pleader had in mind, and the appellant was warranted in so concluding. The agreement for compensation was then pleaded in a separate section, wherein it was asserted that by said contracts the defendants Madero and San Enrique Company agreed to pay the said Winter, as compensation under his employment, a commission of 15 per cent. on all sales of cattle, etc. Since there was a definite provision covering the matter of compensation in the written contract of 1912, and there was no specific allegation of change thereof by an oral agreement made in March, 1913, we are inclined to think there was no basis in the pleading for the introduction in evidence of the oral agreement changing the written contract. "To authorize a written agreement to be set aside and super-

seded upon the ground that an additional agreement has been made verbally in reference to the same matter, the allegation setting up such agreement should with reasonable certainty set out the terms of, and parties to, the contract." Insurance Co. v. Lacroix, 45 Tex. 170.

[8] In this connection the appellant also contends in many ways that there was no consideration for the provision of the oral contract increasing the compensation over that provided for in the written contract, since the written contract was for a period of five years, and bound the said Winter to the performance of the same duties that were imposed by the oral contract of 1913. In this we cannot agree. The enlarged duties and responsibilities and the dangers incident to discharging them would, we think, be a sufficient consideration to support an agreement for an increased compensation.

[9] The appellant also urges that there was a variance between the contract pleaded and that proven, in that it was alleged that the contract of employment was made between Winter on the one part, and Alfonso Madero and the San Enrique Company on the other part, and it was alleged that services were rendered for such parties, and that such parties became indebted to him therefor, while the contracts in evidence on which recovery was had were the contracts of the San Enrique Company alone, and that the services were rendered for the San Enrique Company alone. Under the rules of common-law pleading there would unquestionably be a variance that would prevent recovery under this state of facts. There is a statement in the case of Stewart v. Gordon, 65 Tex. 347, that sustains appellant in this contention, and there are also some other cases that would seem to support this view. Letot v. Edens, 49 S. W. 109, and perhaps others. In the case of Keithley v. Seydell, 60 Tex. 82, it is shown that, under our statutes and decisions, the difficulty in the way of recovery in such case would be only by reason of misdescription. The Supreme Court in the case of McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721, said:

"We see no good reason why, although he [the plaintiff] has alleged the promise of the two [defendants], he should not recover against one upon proof that he promised, although he may fail to prove the promise of the other."

The defendants, other than Otto Winter, themselves pleaded that the contract was with the San Enrique Company, and there was no chance that they were misled by reason of this misdescription of the contracts, and we would be loath to reverse the case on this account. The question will not likely arise upon another trial, and we need not discuss it further.

[10] The appellee, in order to show knowl-edge and approval on the part of the company of the borrowing of the $12,000 from Crotty, introduced in evidence a letter from Francisco Madero to Winter, dated November 4, 1914, in the course of which this statement occurs:

"Carlos told me that you were in doubt as to the different buys of cattle that you had made as to my having accepted them that they were for account of San Enrique. This I do not understand, for when you announced to me the buying of the first one thousand head I told you in writing, and also believe by telegram, that I approved the operation."

And in this connection the witness Winter was permitted to testify that the reference in the letter was to the Crotty transaction. We think that appellants' objection to this evidence was well taken. The various letters and telegrams passing between the parties should have been introduced in evidence, and the jury left to determine what was meant by the reference contained in this letter. If any of the written communications could not be produced, and were properly accounted for, or if oral communications passed between the parties as to such matters, then the witness could detail the substance of such communications, and the jury yet left to draw its own conclusions as to the meaning of this letter. The appellant, in order to show that harm probably resulted from this evidence, introduced in evidence a telegram from Winter to Francisco Madero, dated September 14, 1914, in which he announced that he had bought one thousand head of stock cattle and borrowed the money at the bank, and it was appellant's contention that the reference in the letter was to this matter instead of the Crotty transaction.

[11] In the latter part of the year 1915 Winter, at the suggestion of the Maderos, prepared a claim against the Mexican government for a compensation for loss of cattle taken by various military commanders and raiders, which states many details of such losses and conditions on the ranch during such time. Attached to this claim was an affidavit of H. H. Jeffries, who had helped gather some of the cattle on the ranch, in the course of which affidavit it was stated that one J. C. Jeffries had informed the affiant that in his opinion there were more than 2,000 head of cattle on the ranch in February, 1915. The claim was made by Otto R. Winter, as the owner of the cattle. This claim, with exhibits, was submitted to the Maderos, and with their approval was filed with the Secretary of State at Washington, for presentation, through him, to the Mexican government. This claim, with its exhibits, was offered in evidence, and appellant objected to the introduction of the affidavit of Jeffries, and asserts in particular that the statement as to the number of head

of cattle on the ranch in February, 1915, was harmful in the effect it would have on the disputed claim that the cattle which said Winter claimed to have bought with the Crotty money and the money advanced by himself were then on the ranch. We do not think the affidavit was admissible. The Maderos were not shown to have had any personal knowledge of the truth or falsity of the statements made therein. The acceptance of Winter's statement and affidavits procured by him we do not think could be held to be an admission of the facts stated in them.

[12] We do not think the letter written by Francisco Madero to Alfonso Madero, making a detailed statement of the facts in connection with the Crotty loan, as reported to him by Winter, was admissible. It is true that where a part of correspondence is offered in evidence the whole of it touching the subject-matter in issue is admissible, but this letter is not a part of the correspondence between Winter and Francisco Madero which had been offered in evidence. It is correspondence between Francisco Madero and a third party, after the controversy had arisen, and, in so far as its admissibility in evidence is concerned, should be treated as a self-serving declaration.

[13] We think the objection to that portion of the letter from Francisco Madero to Winter in reference to one Valerian Perez, referred to in the nineteenth assignment, should have been sustained. The statement in the letter in reference to said party was not material to any issue in the case except to cast some suspicion as to the integrity of the said Perez, who was a witness for appellant on the trial in a particular transaction mentioned in the letter. A witness cannot be impeached by evidence of dishonesty in a particular transaction not connected with any issue in the case. Harrington v. Claflin, 28 Tex. Civ. App. 100, 66 S. W. 898; Moody v. Rowland, 46 Tex. Civ. App. 412, 102 S. W. 911. Besides, the statement does not itself prove any wrongdoing on the part of the said Perez, the charge being made merely on report of others.

[14] Several assignments question the sufficiency of the evidence to justify the submission of an issue as to the authority of the said Winter to borrow money for, or lend his own funds to, the San Enrique Company, or to show an agreement to assume the payment of the Crotty loan. Neither of the alleged contracts of employment confers express authority on Winter to borrow money or to advance his own money and bind the company therefor. The Supreme Court in the case of Collins v. Cooper, 65 Tex. 464, discussed at some length the principles that would control in determining whether such acts might be authorized by implication, and would control here if the plaintiff relied upon such authority to support recovery of these items. However, the recovery upon the Crotty note was based on the claim of a subsequent agreement by the appellant to pay the same. It is held that recovery may not be had on a negotiable instrument against an undisclosed principal, who is in no way referred to in the face of the instrument itself. Texas Land & Cattle Co. v. Carroll, 63 Tex. 51; Sanger v. Warren, 91 Tex. 472, 44 S. W. 479, 66 Am. St. Rep. 913; notes to 21 L. R. A. (N. S.) 1045 et seq. This rule would probably prevent recovery on the note itself based on a showing of previous authority to borrow the money for the San Enrique Company. The appellee pleaded, and the jury found, that appellant company, after the execution of the note, promised to pay it. We need not detail the evidence upon which this conclusion is based, but we are inclined to think that the evidence is sufficient to have required the submission of the issue to the jury. We also think that the evidence was sufficient to make an issue as to liability for the advancement claimed to have been made by the said Winter. There was testimony to the effect that the matter of such advancements had been discussed between Winter and the president of the company, and that Winter was encouraged by the president to make such advancement, with the assurance that he would be repaid with a high rate of interest.

[15] There is evidence to the effect that during the term of his employment Winter had some cattle and other stock of his own on the ranch, and the appellant contends that by reason of such facts he is shown to be guilty of such disloyalty and infidelity to his employers as to deprive him of the right to any compensation for his services. The testimony shows that Winter informed the president of the company that he had some stock on the ranch, and no objection thereto seems to have been made. Winter's testimony also discloses that others of the Madero family were informed of the facts in reference to the acquisition of some of the cattle and Winter's claims in reference thereto. We do not think that the evidence conclusively shows that said Winter was guilty of such misconduct in this matter as to deprive him of all compensation under the rules which the authorities have established in such matters. Mechem on Agency, §§ 15, 88, et seq.; 2 C. J. 760; Hahl v. Kellogg, 42 Tex. Civ. App. 636, 94 S. W. 389.

This general discussion is sufficient to a disposition of all the questions that are raised on appeal, and we overrule those assignments which we have not expressly considered. On account of the errors mentioned in the opinion the case will be reversed as to the appellant company, but will be affirmed as to the defendant Madero.