**BURCHILL et al. v. HERMSMEYER.**
**(No. 9436.)**

(Court of Civil Appeals of Texas. Fort Worth. Feb. 19, 1921. Rehearing Denied April 9, 1921.)

**1. Contracts ☞92—Belief in spiritualism does not alone incapacitate.**

One is not shown to be without mental capacity to contract by the mere fact that he believes in spiritualism, particularly where such belief is founded upon evidence such as readings and demonstrations, as distinguished from delusions not founded upon any evidence.

**2. Witnesses ☞341—Impeachment by evidence of collateral dishonesty improper.**

In view of the rule that a witness cannot be impeached by requiring him to testify to discreditable acts on his part immaterial to the issues, in suit to recover for fraud money paid for oil stock, defendant was improperly required to testify that, although in securing charter of the oil development company she

made affidavit that certain land was worth $50,000, later, after the issuance of the charter, she and her daughter conveyed to the company the same land for the recited consideration of $10,000, and that such statement of the consideration was for the purpose of evading the internal revenue tax laws, requiring stamps on deeds based upon the amount of consideration.

**3. Appeal and error ☞1048(7)—Permitting impeachment of witness by collateral dishonesty held prejudicial error.**

Permitting a witness to be impeached by evidence of collateral dishonesty in a suit to recover, for fraud, money paid for oil stock, *held* prejudicial error.

**4. Corporations ☞80(11)—Evidence of transfer to plaintiff of stock as security held relevant.**

In suit to recover money paid for oil stock on the ground that defendant promised, intending not to perform, to secure plaintiff for his advances, which should be returned to him in case he concluded not to exercise an option given him to take stock, evidence was properly admitted that defendants transferred to plaintiff as security the claim of an oil company; such evidence tending to corroborate plaintiff's contention that he was to have security.

**5. Corporations ☞80(11)—Evidence of representations held inadmissible in action to recover money paid for stocks.**

In suit to recover money paid for oil stock on the ground of fraud, plaintiff's testimony as to what defendants told him in regard to another company's being after the oil property was inadmissible on the issue of fraud, in the absence of evidence that such statements on the part of defendants were false.

**On Motion for Rehearing.**

**6. Corporations ☞80(11)—Acquiescence in belief of buyer of oil stock in spiritualism not a badge of fraud.**

In suit to recover money paid for oil stock on the ground of fraud, mere acquiescence on the part of a defendant in plaintiff's belief in spiritualism would not constitute a badge of fraud, but to support the charge of fraud there must be evidence that such defendant induced such belief, or played thereon by some false and deceitful practice, and thus induced plaintiff's action when he would otherwise not have so acted.

**7. Corporations ☞80(12)—That defendant corporation's stock had been fully paid for by individual defendants no defense to suit for fraud inducing subscriptions.**

In suit to recover money paid for oil stock on the ground of fraud, the claim that in taking out the charter of defendant company the total capital stock had been paid for by the individual defendants, so that it was thus deprived of power to fulfill plaintiff's subscription contracts, if any, and that therefore plaintiff would not be bound, was no defense, where the individual defendants bore such relation to the corporation that they could be considered the corporation itself, so that the tender by an individual defendant to plaintiff of the stock

for which he subscribed would be a valid tender in behalf of the corporation.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by H. C. Hermsmeyer against Belle M. Burchill and others. From judgment for plaintiff, defendants appeal. Affirmed in part, and reversed and remanded in part.

Templeton & Milan, of Fort Worth, for appellants.

Slay, Simon & Smith and F. M. Brantly, all of Fort Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment in favor of appellee, H. C. Hermsmeyer against the appellants, Belle M. Burchill and the Fort Worth Development Company, for the sum of $10,000, which appellee alleged had been advanced and paid by him upon an oral promise of the appellant Belle M. Burchill to return to him upon his request to do so, but which appellant claimed had been paid to her for the benefit of the development company upon written contracts for stock, and which had been used in exploring a 40-acre tract of land near the city of Fort Worth for oil and gas.

The transcript of the pleadings, bills of exception, etc., are very voluminous, as also are the statement of facts and briefs of counsel in this court, and we cannot, therefore, within reasonable limits, detail all of the proceedings, but the case has been before us once before on a former appeal (reported in 212 S. W. 767), where may be found a statement of the particulars and of our conclusions upon the questions presented on that appeal. After the reversal directed upon the former appeal, the plaintiff, Hermsmeyer, amended his pleadings, a sufficient statement of which, so far as pertinent, will be made in connection with the questions hereinafter discussed. The evidence on the last trial was very largely the same as on the first, but, in harmony with the amended pleadings so authorizing, the court submitted the case upon the following special issues and charge, which were answered by the jury as indicated, and upon which answers the judgment appealed from is predicated, to wit:

"Gentlemen of the jury: This case is submitted to you upon special issues and you will true answers make to the following questions:

"Issue No. 1: At or prior to the time of the execution of the several instruments in writing, introduced in evidence and under which H. C. Hermsmeyer paid over the several sums of money to Belle M. Burchill, was plaintiff's mind, from any cause, in such a condition as that he did not understand the nature, quality, and consequences of his acts in entering into said contracts subscribing for the shares of stock in the Fort Worth Development Company? Answer: Yes.

"Issue No. 2: At or prior to the dates of the several purported written instruments introduced in evidence, and under and by virtue of which plaintiff paid over the several sums of money to Belle M. Burchill, as shown by the testimony, did the said Belle M. Burchill state or represent to plaintiff that if he would advance said sums of money that she, the said Belle M. Burchill, would give him security therefor, and if plaintiff decided not to take stock in the Forth Worth Oil Development Company, she would refund or repay to him said money? Answer: Yes.

"Issue No. 3: If you answer the preceding question in the negative, you need not answer the following questions, but if you answer said issues in the affirmative, then answer:

"(a) Did the said Belle M. Burchill, at the time she made said statement or representations, intend to comply with the same? Answer: No.

"(b) Did plaintiff rely upon said statements or representations, if any, and was he induced thereby to pay over said sums of money? Answer: Yes.

"You are instructed that the evidence admitted in relation to mediumistic predictions and revelations was admitted only for the purpose of showing, if you believe that it does show, the state and condition of plaintiff's mind at the time of the several transactions testified about, and you will not consider said testimony for any other purpose except for the purpose for which the same was admitted as above stated, it being for the jury to determine whether or not it has any effect upon the issue above referred to. The burden is upon the plaintiff to prove the affirmative of the above issues by a preponderance of the evidence, and, unless he has done so, you will answer them in the negative. You are the exclusive judges of the credibility of the witnesses, of the weight of the evidence, and of the facts proved.

"Additional special issues requested by defendants:

"Issue No. 1: What was the purpose of the assignment by the Palo Pinto Oil Company to H. C. Hermsmeyer of its claim against the Fort Worth Oil Development Company? Answer: For the purpose of securing H. C. Hermsmeyer.

"Issue No. 2: Was said assignment executed by said Palo Pinto Oil & Gas Company with the knowledge and consent of the defendants for the purpose of keeping said debt alive in the hands of plaintiff as security for the repayment of his money, or was said assignment given for some other purpose? Answer: Given with consent of defendants as security for repayment of plaintiffs' money."

[1] By appropriate assignments and propositions, particularly by the first proposition under appellants' first assignment, and by appellants' twelfth and thirteenth assignments of error, the finding of the jury on the first issue is assailed on the ground that the evidence is insufficient to warrant the finding to the effect that plaintiff was of unsound mind to such an extent as to invalidate his written contracts for stock. We are of opinion that the proposition and assignments referred to must be sustained. The evidence relied upon in support of the finding and of

appellee's amended pleading, to the effect that the written subscriptions for stock referred to were secured at a time and under circumstances when his mind was incapable of understanding their nature and effect, is for the most part testimony showing appellee's belief in spiritualism, and his acts in following spiritualistic communications and the opinion of two physicians, tó the effect that a person entertaining a belief that disembodied spirits, through a medium, may convey knowledge of future and hidden things, was of unsound mind. On the former trial this evidence was relied upon as supporting allegations that by such means appellant Belle M. Burchill had been enabled to fraudulently secure the written contracts, but in deference to what we said on the subject on the former appeal, and in view of the fact, as we assume, that the trial court concluded that the evidence failed to so connect Belle M. Burchill with the spiritualistic communications as to authorize an inference of fraud, the charge, as above shown, on the last trial, limited the evidence mentioned to the sole issue of appellants' mental capacity.

Appellee's able counsel has not referred us to any decision which holds that a belief in spiritualism constitutes the subject insane or incapable of making a valid contract. On the contrary, all of the authorities that we have been able to examine hold otherwise. In the case of Middleditch v. Williams, a New Jersey decision, reported in 45 N. J. Eq. 726, 17 Atl. 826, 4 L. R. A. 738, it was held that a belief that there can be communications between spirits of the dead and living is not an insane delusion. A number of cases are cited which are not available to us. One of the quotations made with approval from another New Jersey case (Lozear v. Shields, 23 N. J. Eq. 509) is that:

"Mania does not, per se, vitiate any transaction, for the question is whether such transaction has been effected by it. Where a pure defense of mental incapacity is interposed, I think the true test in this class of cases is whether the party had the ability to comprehend, in a reasonable manner, the nature of the affair in which he participated. This is the rule in the absence of fraud, for fraud, when present, introduces other principles of decision."

Another quotation, made by the same case from a Maryland decision (Brown v. Ward, 53 Md. 376, 36 Am. Rep. 422), is as follows:

"The court cannot say, as matter of law, that a person is insane because he holds the belief that he can communicate with spirits [of the dead], and can be and is advised and directed by them in his business transactions and in the disposal of his property."

And it was said that the same view was expressed in the case of Otto v. Doty, 61 Iowa, 23, 15 N. W. 578, and al_o in Re Smith's Will, 52 Wis. 543, 8 N. W. 616, 9 N. W. 665,

38 Am. St. Rep. 756. The case to which we have referred was one involving the mental capacity of a testator to make a will, but it is well established that the mental capacity to make a will and that necessary to make a valid contract is substantially the same. In Am. Digest of Decisions, under the title of Wills, 49 Cent. Dig. col. 96, par. F, numerous cases are cited to the effect that a belief in spiritualism does not of itself incapacitate to make a valid will, or that a belief in witchcraft is not evidence of such insanity as to disable a person from making a will. A number of other cases are also cited in the authority last referred to of like effect, and when these authorities are considered in the light of the testimony in this case, we feel no hesitancy in saying that the mental capacity of appellee, H. C. Hermsmeyer, is not shown to have been so deficient as to incapacitate him to substantially understand and comprehend the transactions detailed by him, or to relieve him of the legal effect of his written subscriptions for stock. On the trial he testified at great length, both on direct and on cross-examination, and his testimony was entirely coherent and apparently free of any taint of insanity. Among other things, he testified:

"I have never been confined in an asylum. I do not claim to be crazy, not that I know of, anyway. I do not claim that I was ever crazy. I do not think that I was ever crazy, not that I know of. I was not crazy at the time I was having these transactions with Mrs. Burchill, but it would Have been a whole lot better for me if I had been a little smarter. I don't think now that I was crazy. I don't think that I had as much sense then as I have now. As to whether it is my idea that there was anything the matter with my mind, or simply that I have got more experience now than I had then, I answer, I have had a whole lot more experience; I know that. I know that I wouldn't go through the same thing again for anything.

"I don't know whether I did or not know what I was doing while this was going on. I did testify about it, but I mean in the way of business. I think I knew what I was doing, but there is things that I would have made a little bit better yet, if I had known it. * * *

"I do not believe that a man who believes in spiritualism is crazy. I do not think that people who believe in spiritualism and believe that mediums can foretell some things is crazy. I do not think that now, but I know there is some dishonest ones though. I am satisfied of that; I am convinced of that. You can't tell which is honest and which is dishonest until you try them. And I guess you can't tell them then until you find them out. * * *

"I did believe a good deal in these medium predictions, but not in all of them. Some of them I would not believe in, and never went near them. The medium that I talked to, and that Mrs. Burchill was talking about, I religiously believed in what they told me in this case, and I parted with my money partly on that reason. I parted with it partly on her promise to pay me the money back on what

she was willing to risk; I did not risk; I didn't think I was anyway. I believe in a whole lot, but that don't make it positive; there is a difference between being positive and believing. I believed in mediums, but I knew that mediums were sometimes mistaken. I did believe what the spiritualistic medium told me about there being oil there, but I wanted to be positively secured, and that is why I exacted an oral contract to pay me my money back. I believe in mediums, but I knew that mediums were sometimes mistaken, and for that reason I wanted to be secured. * * *

"The first experience I had with mediums was some 30 years ago. Then I did not see any more mediums after that in that country. I have been a spiritualist about 28 years. I have attended very few séances. By reading books and pamphlets on the subject I knew about what they claimed. I knew that some mediums were frauds, and that some claimed to see things and could not see them, and then I made a contract with Mrs. Burchill to pay me the money back so I would be sure about it; she was so positive. * * *

"These statments that Kiser (the medium) made with reference to the oil being under the ground, I believed the oil was there, but of course I was not positive. I believed in Kiser as a medium. I thought he was as honest as he could be; I honestly took him that way. I did not doubt his word at that time, but of course you do not know exactly—you are not positive—but I relied on it a whole lot, quite a bit. I relied enough on it that I sold my farm at a sacrifice price and went there at my own expense to get it. I would not have gone into this venture if I had not believed in the predictions of the spiritualistic mediums. * * *

"If I had not had this oral agreement with Mrs. Burchill that she would pay me the money back if we did not find oil, I should say I would not have paid this money. That agreement and the mediums together influenced me to pay the money or put the money in.

"Yes; I say I believe in mediums, but you can't always believe, and for that reason I wanted to be positive; I wanted to be secure. Yes; I knew I was liable to be mistaken; that is, that the mediums were liable to be mistaken, but they were not bound to be mistaken all the time, but I found that they were liable to be mistaken."

Wm. Hermsmeyer, appellee's son, also testified that he was a spiritualist, and had been for some 25 years; that he assisted his father in all of his dealings with Mrs. Burchill; that he knew what was in the subscription contract of April 19, 1916, and further testified:

"I think I knew what was in this paper when I signed it; and my father knew what was in it when he signed it. No; I don't think either of us were crazy at the time. We both knew what was in it when we signed it."

Mrs. Hermsmeyer, the wife, testified:

"I have been a spiritualist about 25 years, I guess. We do not belong to any church, as far as that is concerned. I believe in the spiritualist religion. No; I haven't noticed anything about that making any of us crazy or abnormal. I have never observed anything

wrong with Mr. Hermsmeyer's mind. He is just about the same now mentally as when he was having these transactions in controversy here. Been no change in his mental capacity in the last 25 years, so far as I can tell. I regard him a normal man, and in the early part of 1916 I think he had sufficient mental capacity to know what he was doing. He was a man capable of forming mental decision in a business transaction; he does do it, and always did on the ranch. He was very good in that respect. He was a man of fairly good judgment. He has been engaged in doing business for himself ever since I have known him."

Appellee further testified that he first met Mrs. Burchill at the medium Kiser's house; that Kiser introduced him to Mrs. Burchill; that he also met Mrs. Burchill at Kiser's house on a later occasion; that on neither occasion was the meeting by appointment, but that on a second occurrence Mrs. Burchill was talking with Kiser about getting a company started to drill for oil; that these meetings were long before he had paid any money in on the enterprise. A further reading of his testimony shows that he was a spiritualist while in Montana, long prior to his residence in Texas, and that his belief in the power of mediums to deliver spiritualistic communications was from reading, and because a medium had designated a certain corner, a land corner we assume; and further indicates, substantially, that whatever power spiritualistic communications had upon him was exerted more particularly by Kiser and others than by Mrs. Burchill.

In the New Jersey case, to which we have already referred, the court, after citing a number of definitions, makes a distinction between delusions not founded upon any evidence and those founded upon evidence such as readings and demonstrations, and from the evidence already referred to it will be seen that appellee's belief in spiritualism was not a delusion arising out of a disordered mind, but, instead, one formed by evidences by him considered sufficient. It would lead to great confusion and intolerable results for courts to hold that one contracting could avoid his contract merely because he had drawn erroneous conclusions from evidences considered by him sufficient, even though by the generality of mankind such conclusions might be termed delusions or superstitions.

Appellant also objected to the submission of the second and third issues above, and to the evidence in support thereof, and to the sufficiency of such evidence to sustain the findings of the jury. The ground of the objection to the submission of the issue of the oral promise to treat the evidence contravenes the well-established rule which forbids conflicts with, variances from, or additions to, written contracts. Such was our holding on the former appeal, it being there held that in the absence of allegations of fraud, accident, or mistake the evidence of the oral promise was inadmissible. On the last trial,

however, the plaintiff so amended his pleadings as to charge that the oral promise of Mrs. Burchill to return the moneys paid to her by him had been made for the fraudulent purpose of thereby securing the moneys and without any intent on her part to fulfill the promise, thus bringing his case within the rule laid down in the case of Bigham v. Bigham, 57 Tex. 238, and Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39. The last-cited case has been followed several times since and announces the doctrine that obtains in this state on the subject. See Cearley v. May, 106 Tex. 442, 167 S. W. 725; Cook v. Hardin, 174 S. W. 633; Wyatt v. Chambers, 182 S. W. 16; Walton v. Harigel, 183 S. W. 785.

Under such allegations, therefore, with evidence supporting the same, and the verdict in appellee's favor, the judgment is to be supported, if at all, not on the theory that the basis of appellee's right was the oral contract, and that he was seeking to enforce, but on the theory of fraud and deceit whereby the written contracts were vitiated and in consequence of which appellee would be entitled to have restored to him that with which he had parted by reason of such fraud and deceit.

Nor are we able to say that there is no evidence which tends to support findings Nos. 2 and 3. In view, however, of the fact that the judgment must be reversed because of an error pointed out in another assignment, to which we will immediately refer, we will not discuss the sufficiency of the evidence to support findings Nos. 2 and 3, as we have no means of knowing just what testimony upon these issues will be offered upon another trial, nor the weight that may be attached thereto.

[2, 3] By the assignment just referred to, which is of controlling effect on the findings last mentioned, appellant complains of the court's action in requiring her, over the objection of her counsel that it was irrevelant and immaterial, to testify to the effect that in securing the charter of the development company she made affidavit that the 40 acres of land in controversy was worth $50,000, and that later, after the issuance of the charter, she and her daughter conveyed to the development company in fee-simple title the same land for the recited consideration of $10,000, and to permit and require her further cross-examination, shown as follows:

"Q. Why did you put the consideration in the deed [the deed to the development company] at $10,000, instead of $50,000? A. I didn't want to pay the enormous sum for stamps, and I made the consideration, not the valuation.

"Q. Didn't you know that it was a violation of the United States laws to make a deed and to understate the valuation in the deed in order to beat the Internal Revenue Tax?

"Mr. Templeton (counsel for appellant): I

object to that as immaterial and irrelevant to any issue in this case.

"Mr. Smith (counsel for appellee): It is admissible on cross-examination on a very—

"The Court: I don't see how it could affect any issue in this case.

"Mr. Smith: It affects the credibility of the witness.

"Mr. Templeton: I don't think it does, your honor.

"Mr. Smith: Directly connected with this lawsuit.

"Mr. Templeton: I object to it as wholly irrelevant and immaterial for any purpose.

"The Court: I will permit you to introduce it for that purpose and that purpose only, if it does affect the credibility of the witness.

"Mr. Templeton: We except to the ruling of the court.

"Mr. Smith: Did you know at the time you made that deed after you had made an affidavit that this property was valued at $50,000 and you deeded it to the company in payment of that much stock to understate the consideration by $40,000 in a deed that was a violation of law? A. No; I didn't think it was violation of the law; if it is, I am afraid a good many in Forth Worth would be violating the law. I think you are one of the number."

We are of the opinion that the assignments and propositions relating to the proceedings thus indicated must be sustained.

After an elaborate review of the authorities, it was decided by our Supreme Court in the case of Boon v. Weathered, 23 Tex. 675, that a witness cannot be impeached by evidence as to particular facts, as shown above. It cannot be so done even on cross-examination. See Railway Co. v. Johnson, 83 Tex. 633, 19 S. W. 151, where it was held that the court erred in requiring the witness to state that he was a deserter from the United States Army.

In the case of M., K. & T. Ry. Co. v. Creason, 101 Tex. 335, 107 S. W. 527, in an opinion by Mr. Justice Brown, the case of Boon v. Weathered, supra, among others, was approved, and it was distinctly held error for the trial court to permit the opposing party, upon cross-examination of a witness, to prove that the witness had been charged with arson and other crimes.

In Price v. Wakeham, 48 Tex. Civ. App. 339, 107 S. W. 133, it was held to be error in an action on a liquor dealer's bond to show by cross-examination of a witness that the witness was unmarried and had associated with prostitutes, etc.

In the case of Moody v. Rowland, 46 Tex. Civ. App. 412, 102 S. W. 911, it was held on rehearing that under the circumstances of that case it was not error on the part of the trial court to exclude evidence tending to show that the appellee in a different transaction exhibited to appellant a fraudulent and forged abstract of title to land, and it was said:

"It seems to be settled in this state that a witness in a civil case cannot be discredited or impeached by requiring him to testify to dis-

creditable acts on his part having no material bearing upon the issues involved in the case"— citing Railway Co. v. Johnson and Boon v. Weathered, supra, and Dillingham v. Ellis, 86 Tex. 447, 25 S. W. 618.

In Taylor v. McFatter, 109 S. W. 395, it was held that the trial court properly refused to permit the defendant to ask the plaintiff on cross-examination whether since he had lived in the neighborhood he had not continually had trouble and lawsuits with his neighbor.

In Moore v. Moore, 73 Tex. 382, 11 S. W. 396, the plaintiff proposed to prove by the defendant while on the witness stand, for the purpose of impeaching his credibility, that he, the witness, had been in the Confederate Army, and later had taken the ironclad oath to qualify himself to hold office under the federal government. It was held that the proof was incompetent and irrelevant. In Cooper Grocery Co. v. Britton, 74 S. W. 91, this court held that a witness could not be discredited by showing that he was financially embarrassed.

In Harrington v. Claflin, 28 Tex. Civ. App. 100, 66 S. W. 898, by the Dallas Court of Civil Appeals, writ of error refused, it was held that a witness could not be impeached by a single transaction, tending to show want of integrity on his part, when the transaction itself was not material to any issue in the case.

In the case of City of San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 231, writ of error refused, it was held that in an action by a married woman she could not be impeached by evidence that a child had been born to her three months after her marriage.

In Fire Ins. Co. v. Faires, 13 Tex. Civ. App. 111, 35 S. W. 55, a ruling of the trial court, to the effect that a plaintiff testifying in her own behalf could not be discredited by showing that she kept an assignation house, was approved.

In Railway Co. v. Adams, 42 Tex. Civ. App. 274, 114 S. W. 453, it was held that a witness could not be impeached by evidence of particular instances of untruthfulness.

In Dooley v. Boiders, 128 S. W. 690, it was held that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of impeaching him.

In the case of Loftus v. Maxey, 73 Tex. 242, 11 S. W. 272, while T. F. Loftus was on the witness stand, testifying for himself and codefendant, he was asked by the plaintiff's counsel the following question:

"Did you not at the last term of the court refuse to inform the deputy sheriff who had subpœnas where your witnesses in this cause resided, or could be found, notwithstanding the fact that one of the witnesses was in your store at the time? The witness answered, 'Yes'; his objection that the evidence was irrelevant having been overruled."

The ruling was assigned as error, and in disposing of it and in reversing the judgment below because of it, we quote the following from the opinion, as closely applicable in this case:

"The court committed error for which the case must be reversed in not excluding the evidence of T. F. Loftus when objected to. Without contesting the proposition that his conduct in not aiding the sheriff to serve the process of the court, issued at his own instance and for his own witness, was reprehensible, and that his affidavit for a continuance following that dereliction, was criminal, it still does not follow that the evidence was admissible or proper even against himself in this suit. Without regard to who the parties are or their guilt or innocence in other transactions, all suits must be tried upon evidence pertinent to the issues made by the pleadings. * * * This party was a material witness in his own behalf, the evidence was directly conflicting. His admission of what he had done was justly calculated to impair confidence in his integrity and truthfulness, and may have had some influence on the verdict, as it doubtless was intended to have by the party offering it."

Appellee cites no authorities in support of the ruling below in this case, and we think the ruling was unquestionably erroneous and prejudicial.

The charter to the development company and the transfer of the land thereto by the incorporators were mere incidents developed by the controversy between the parties, and the intent and purpose of Mrs. Burchill in placing the consideration in the transfer to the company at $10,000 instead of $50,000, as stated in her affidavit to procure the charter, was not an issue in the case. As an issue it was wholly collateral to those upon which the judgment must rest. The use probably made of this proof before the trial jury is doubtless indicated by the following quotation from appellee's counter proposition to the assignment under discussion. It is there said that the answer of Mrs. Burchill was—

"material and admissible as tending to show bad faith, if not a criminal intent and design in the execution and delivery of the deed, as well as of bad faith toward the plaintiff in withholding the deed with its admittedly false recital from record until long after plaintiff had parted with his money."

The entire defense in this case rests principally upon the testimony of Mrs. Burchill, and the impeaching testimony was, and is, therefore, highly prejudicial to her. She has the legal right not to be discredited by incompetent and irrelevant matter. We accordingly sustain appellant's ninth assignment of error, and conclude that the judgment must be reversed because of the error.

There yet remains a number of assignments of error, but for the greater part they are directed to rulings of the court that re-

late to issues of fraud not submitted to the jury, and which, therefore, are not of controlling importance on this appeal.

In view of another trial, however, we will add to what was said on the former appeal, and to what we have already herein said, that mere representations of appellant, not shown to be false, or of some medium or geologist, could in no event constitute a legal basis for fraud. While appellee's pleadings were broad enough, the case, as developed by the evidence on two trials, is not one where any special relation of confidence or trust existed, or where the strong, in devious ways, created in the mind of the weak the delusion, if it is to be so termed, of spiritualism, or deceitfully worked upon a mind already having such belief, for the purpose of securing moneys. On the contrary, by appellee's own testimony, and that of his wife and son, he appears to be a man of ordinary intelligence, enabled to accumulate a comfortable amount of property. He believed in spiritualism as a religion. This belief seems to have been one of many years' standing, and founded upon evidences satisfactory to himself. He knew that all mediums were not able to accurately disclose communications from the spirits; he did not trust all of them; he did, however, have faith in Kiser, and consulted him, apparently, prior to any negotiations with appellant, and without, so far as the evidence shows, being instigated thereto by her. Both parties consulted Kiser, and apparently listened with favor to his assurances, and also to assurances of some geologist. With such apparent belief, both parties, with a hope of a large reward, engaged in the enterprise. Appellee advanced money, as he alleges and testifies, upon the promise that he should be secured, and that it would be returned to him in event he concluded not to exercise an option given him to take stock in the development company. As it seems to us, this contention presents the vital issue in this case. If appellant made such a promise deceitfully, without intent at the time to fulfill it, and if appellee advanced his moneys, trusting to such assurances, it would amount to a fraud, for which a court of equity would decree a restoration to him of that which he had lost by reason of the fraud. If, therefore, the evidence upon another trial should be as upon the last two, the court should exclude the representations or declarations of the mediums or of the geologists, not shown to have been falsely made, and not necessary to a clear understanding of the orderly progress of the negotiations between the parties, or such as tended to show the confidence, or want of confidence, on their part.

[4] In this connection, it may be stated that we find no error in the ruling of the court in admitting in evidence the fact, as found by the jury, that appellants transferred to appellee, as security, the claim of the Palo Pinto Oil Company. This evidence, among other things that may be said of it, tended to corroborate appellee in his contention that he was to have security.

[5] The following assignments of error, however, we think are well taken: Testimony of appellee with reference to what Mrs. Burchill and Edna Burchill had told him in regard to the Magnolia Company being after the property, as complained of in the seventh assignment, was inadmissible on the issue of fraud in the absence of evidence that such statements on the part of Mrs. Burchill and Edna Burchill were false.

The testimony complained of in the eighth assignment of error, to the effect that Hermsmeyer failed to discover the circumstances of the incorporation of the development company, and of the fact that all of the stock had been subscribed for by the defendants, seems to be wholly irrelevant and immaterial to the issues submitted. The like conclusion also applies to evidence complained of in appellant's tenth assignment of error, relating to the lease contract between the Fort Worth Oil & Development Company and W. T. Wood.

We find no error in the court's refusal to require the plaintiff to state upon which theory or phase of his case he sought to recover, as it is not one of conflicting remedies to which the rule on that subject is applicable.

In view of the agreement of date July 3, 1916, and of several receipts thereafter signed, we think the subscription contract of date April 19, 1916, and found printed in the second column of page 768 in 212 S. W., was admissible. The subsequently executed contracts and receipts referred to were, inferentially at least, in fulfillment of the subscription contract of April 19, 1916, and all were to be read together. It is to be remembered that the subscription contract of April 19th was not declared upon by appellants as a basis for any recovery, but that instrument, together with the others, was interposed defensively, and tended to show that moneys paid in by appellee after April 19, 1916, were paid pursuant to this subscription contract, and not upon a verbal promise of repayment, as set up affirmatively by appellee. The instrument, therefore, would be admissible under appellants' general denial, and its admission is not to be controlled by the rule relating to the subject of a variance between allegation and proof, nor is its admissibility affected by the fact that it was jointly signed with appellee by W. G. Hermsmeyer, it nevertheless remained a contract on appellee's part. Nor was its admissibility affected by the fact that in taking out the charter the total capital stock had been paid for by appellant and her associates. In view of the character of this suit and the further undisputed facts appearing in the record that appellee

was offered the stock in the development company for which he subscribed, and that he refused to receive the same, not upon the ground that the stock for any reason was invalid, but upon the sole ground that he was not compelled, under his option, to receive it, we know of no reason for holding that a contract, upon the part of Mrs Burchill for the development company, might not be fulfilled by the stockholders, even after full subscription and payment of all of its authorized capital stock. We therefore overrule appellee's cross-assignments of error and all propositions thereunder.

For the error of the court, however, as pointed out in the ninth assignment of error, the judgment below must be reversed, and the cause remanded for another trial as between appellee and Mrs. Belle M. Burchill and the development company, and it will be so ordered; but the judgment below in favor of Edna Burchill is left undisturbed, there being no complaint of the judgment in this respect.

Judgment affirmed in part, and reversed and remanded in part.

On Motion for Rehearing.

[6] An insistent motion for rehearing has been urged in behalf of appellee in this case; and, while we think our original opinion sufficiently disposed of the material questions presented, it may nevertheless not be improper to briefly add that we did not undertake to say that the stock subscription contracts cannot be set aside for fraud or for want of mental capacity. We merely held that these contracts could not be varied or added to by parol evidence, in the absence of fraud, accident, or mistake; and that mere opinions and representations of fact, not shown to be false, will not support a finding of fraud. Nor do we think we are to be understood as holding that in no event would appellee's belief in spiritualism be relevant. We only held that such belief of itself was insufficient to support a finding of a want of mental capacity or to authorize an opinion to that effect by experts, and that the subject was irrelevant (except as incidentally necessary in an orderly development of the case for the sake of clearness), in the absence of evidence tending to show that Mrs. Burchill induced such belief or played thereon by some false and deceitful practice (of which there was no evidence), and thus induced H. C. Hermsmeyer's action when he would otherwise not have so acted. Mere acquiescence on the part of Mrs. Burchill in Hermsmeyer's belief in spiritualism will not constitute a badge of fraud.

[7] Renewed emphasis is placed upon the fact that in taking out the charter of the appellant company the total capital stock had been paid for by appellant and her associates, the contention being that the corporation was thus deprived of power to fulfill appellee's stock subscription contracts, if any, and that hence appellee would not be bound. In addition to what we said on this subject in former opinion, we will add that the undisputed facts show that appellant, together with Edna Burchill and Mr. Templeton, were, by the terms of the charter, its only officers, and entitled to receive all of its authorized capital stock, none of which, however, appears to have been issued at first. The appellant was not only president, but appears to have been the chief acting agent of the corporation and all of her acts seem to have had the approval of her associates and stockholders, and the three persons named may, in a very important sense, be considered the corporation itself. Therefore the tender of Mrs. Burchill to appellee of the stock for which he subscribed was a tender in behalf of the corporation, and its validity, had it been accepted by appellee, would in no wise be affected by the fact that appellant and her associates had paid for all the authorized stock. Appellee's contention has for its basis the general rule that a corporation is distinct from its officers and stockholders, but this distinction is not always observed by the courts in the administration of justice. In 7 Ruling Case Law, under the title Corporations, section 4, it is said:

"The doctrine, however, that a corporation is a legal entity, existing separate and apart from the persons composing it, is a mere fiction, introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual, or individuals, owning all its stock and assets, will be treated as identical."

In Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627, in discussing the subject and authorities relating thereto, our Supreme Court quoted with approval the following pertinent statements from 7 Thompson on Corporations, § 8043:

"Other decisions tend to the conclusion that while in theory of law the corporation and its shareholders are distinct persons, and the latter have no agency for the former, yet equity, which looks to the substance of things, may in an appropriate case, and for the purposes of justice, treat a debtor corporation and an individual owner of all its shares as identical."

We, therefore, must adhere to our original conclusion overruling appellee's cross-assignments of error and all propositions thereunder.

A further contention is made that appellee was, at least, entitled to a judgment for the claim of the Palo Pinto Oil Company which had been assigned to him, but it is evident that appellee's action was not instituted with any such end in view. His action is to re-

cover the full sum of $10,000, including the amounts advanced by him which form the consideration of the assignments referred to, and it cannot be seriously contended that appellee is entitled to a double recovery. As the case is presented in the record before us, there is evidence tending to show in behalf of appellants that the sums advanced by appellee to the Palo Pinto Oil Company were regarded as payments to that extent upon appellee's stock subscriptions, and that the assignment was made for the purpose of security, and not with a view of thereafter urging the claim as an independent ground of recovery. We do not undertake to say that the claim may not have been so presented, but merely that, as presented in the record before us, we do not feel authorized to affirm the judgment in the amount paid to the Palo Pinto Oil Company.

We conclude that the motion for rehearing must, in all things, be overruled.

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes