ered in connection with the motion for rehearing.

The state introduced Mr. and Mrs. Brandenburg, who testified at length to the acts of the appellant in the manufacture of intoxicating liquor at their home, in which they both participated. They testified further that, following a difficulty between appellant and Brandenburg, appellant carried the still away from the premises. One Hoskins for the state testified that he found the still, which was identified by Brandenburg and his wife, in the bushes near a certain public road described in the evidence. Appellant was arrested at the home of his brother, and a search of his brother's premises failed to reveal the presence of any liquor, still, etc.

[4, 5] Brandenburg and his wife were clearly accomplices. We find nothing in the record tending to connect the appellant with the possession of the still, save their testimony alone. Hoskins testified that on one occasion appellant turned a car over near the house of witness and appeared to be drinking; that appellant was coming down the public road just referred to from the same general direction in which later the still was found in the brush some 100 or so yards from said road. Under the facts in this case, that appellant was coming down the public highway from the southwest, and that a still, identified by Brandenburg and his wife as the one which appellant had carried away from their house some time before, which was later found in the brush not far from said road, would not seem to have substantial evidential value as tending to connect appellant with possession of the still.

A small quantity of liquor was found in a boat belonging to appellant, or appellant and his brother, but there is not the slightest intimation that same was made by the still in question, and there is cogent evidence supporting the proposition that the liquor was put in the boat by Brandenburg, who is the brother-in-law of appellant.

[6] We are compelled to the conclusion that the evidence does not measure up to the requirements of the law. Applying the test of exclusion, often resorted to, and looking at the case aside from the testimony of Brandenburg and his wife, there is nothing tending to connect appellant with the still. It would be reasonable to conclude that hundreds of people travel along the highway coming from the direction of the still past Hoskins' home, and that appellant did so would not be a circumstance of any value. That a man should travel said highway and be drinking would not seem to be of any particular force. As we understand the record, the still was not set up, nor in condition for operation, at the place where it was found.

Responding to our conclusion regarding the evidence, as above announced, the motion for rehearing is granted, the affirmance set aside, and the judgment is now reversed, and the cause remanded.

---

**STATE NAT. BANK v. ENCINAL MERCANTILE CO.   (No. 7420.) \***

(Court of Civil Appeals of Texas. San Antonio. Oct. 28, 1925. Rehearing Denied Nov. 18, 1925.)

**1. Corporations ⬅519(3)—Evidence held to show that corporation, sued on note executed in its name by president, was owned by, and mere creature of, latter.**

In action against corporation on note, executed by its president in its name, evidence *held* to show that president owned, and to all intents and purposes was, corporation, which therefore was liable on note.

**2. Equity ⬅56—Equity will treat corporation and individual owner of its shares as identical to prevent wrong and injustice.**

Equity looks to substance and spirit of transaction, and, to prevent wrong and injustice from prevailing, will treat corporation and individual owner of its shares, who uses it only for individual purposes, as identical.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by the State National Bank against the Encinal Mercantile Company. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Hal Browne and R. F. Spencer, both of San Antonio, for appellant.

Clamp & Searcy, of San Antonio, for appellee.

FLY, C. J. This is an action begun by appellant against appellee, to recover on a certain promissory note in the sum of $26,045.91, alleged to have been executed by appellee to appellant. Appellee denied execution of the note, and pleaded: That, at the time the note was executed, T. A. Coleman, its president, was personally largely indebted to appellant, and was unable to pay the same; and sought an extension of the same from the bank, and "that, in order to reduce the amount of the loan to said T. A. Coleman on the books of said plaintiff bank, it was suggested that the indebtedness of said T. A. Coleman, then maturing, should be embraced in a note to be executed by said T. A. Coleman in the name of the Encinal Mercantile Company with his personal indorsement thereon, and this was done. That the note sued on by plaintiff in this suit is the note which was executed under the circumstances herein alleged, and was in truth and in fact the note and indebtedness of T. A. Coleman,

---

an individual, and not the note and indebtedness of said Encinal Mercantile Company. That no money was paid to the said T. A. Coleman at the time said note was executed, and that the Encinal Mercantile Company, defendant herein, received none of the proceeds of said note, nor was any money in fact paid by said plaintiff bank to any one on account of the execution of said note, but that the note was in renewal of an indebtedness theretofore owing said bank, and the accrued interest thereon, by said T. A. Coleman. That the said T. A. Coleman used the credit and name of said defendant, Encinal Mercantile Company, for his personal business, and was without authority, in fact or in law, to execute the note herein sued on by plaintiff on behalf of this defendant, Encinal Mercantile Company." In a supplemental petition it was alleged that appellee was not a private corporation but a trade-name of T. A. Coleman. The cause was heard without a jury, and judgment rendered that appellant take nothing by its suit any pay all costs of the same.

[1] The uncontroverted facts show that a charter was applied for to the state of Texas, and in that application it was recited that the paid-in stock was $40,000, of which T. A. Coleman owned 396 shares, par value $100 a share, W. F. McKinney, one share, S. A. James, one share, Homer Eads, one share, and S. J. Jordan, one share; the last four named not paying anything for their shares. Coleman conveyed to the appellee real estate and merchandise of the value of $40,000 to constitute the capital of the company. No stockholders' or directors' meeting was ever held, there being no directors, but Coleman had full control of the financial affairs of the company. Both parties agreed that the facts given were true. Coleman at different times gave notes to different parties in the name of appellee. S. A. James, who had one share in the concern without paying for it, and who was secretary and manager of the concern and looked after the business, received $2,500 per annum for his services. When asked if he was running the business for T. A. Coleman or the other stockholders he said: "We were trying to help him out all we could." The witness refused to affirm or deny that the mercantile business was for the benefit of T. A. Coleman in his ranch business, although the principal business of the mercantile concern was to furnish supplies for Coleman's ranch. James swore that appellee was indebted to creditors in the sum of $43,000, and that Coleman owed it $50,000. His ranch hands were paid through the mercantile company. James swore that he knew

that Coleman was in financial straits and insolvent, and yet he sold him goods up to the time that he entered the bankrupt court. The facts showed indubitably that Coleman owned the corporation and to all intents and purposes was the corporation. No other man paid in a dollar of the capital stock of the so-called corporation.

This is a contest between a creditor and the Encinal Mercantile Company, and no shareholder, if there were one, or any creditor, has intervened to complain of the action of Coleman in executing a promissory note for his debt in the name of the mercantile company. The latter was nothing but the alter ego of T. A. Coleman, which moved as he moved and acted as he acted, and it is a farcical paradox for the alter ego to be complaining of the acts of the ego. The corporation, if it ever became one, was merely the creature of its creator and owner, and had no object, no existence, except as the agency of its creator. It was one of the instruments of his business, and he alone controlled its destinies and directed its actions.

[2] Equity looks to the substance and not the shadow, to the spirit and not the letter, in a case made appropriate by the facts, and to prevent a wrong and an injustice to prevail, will treat a corporation and the individual owner of its shares as identical, one with the other. It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling. If an individual owner of a corporation uses it only for individual purposes, they will be considered to all intents and purposes one and the same. Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627; Burchill v. Hermsmeyer (Tex. Civ. App.) 230 S. W. 809; Boston Corp. v. Guarantee Life Ins. Co. (Tex. Civ. App.) 233 S. W. 1022; Perkins v. Realty Co., 69 N. J. Eq. 731, 61 A. 170; Bank v. Trust Co., 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79.

In this case there is no question that T. A. Coleman was indebted in the sum shown in the note to appellant, that he had the right and authority to sign the name of the mercantile company to that note because it was his other self, a mere agency created by and owned solely by him, and he could use it for all his purposes, and, such being the case, the mercantile company should be held liable for the debt. Any other course of action would be inequitable and unjust. The error is fundamental.

The judgment is reversed, and judgment here rendered that appellant recover of appellee the amount of the promissory note with interest as specified therein, attorney's fees, and costs.