### CLARK et al. v. MERCHANTS' REALTY CO. (No. 791.)

Court of Civil Appeals of Texas. Waco. June 27, 1929.

Rehearing Denied Oct. 3, 1929.

Carter & Berwald, of Dallas, for appellants.
Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

BARCUS, J. Appellee, a corporation, instituted this suit against appellants to recover what it claimed as unpaid rent. The cause was tried to a jury, submitted on special issues, and resulted in a judgment being rendered for appellee for $1,105, together with a foreclosure of its landlord's and contract lien.

The record shows that in July, 1922, appellants Clark and Chinski rented a store building in Dallas from appellant, agreeing to pay $350 a month for a period of five years. The contract retained a lien to secure the rent on all the goods, wares, and merchandise as well as the furniture and fixtures contained in said building. A few months after the contract was made, appellants Clark and Chinski incorporated their business under the name of S. P. Clark, Inc., and continued to occupy said premises until the 27th day of December, 1924, and paid the rent due until January 1, 1925. On October 20, 1924, a fire originated in the building adjoining or over the property occupied by appellants, and as a result thereof the stock of merchandise carried by appellant S. P. Clark, Inc., as well as the building, was greatly damaged.

The rental contract as made between the parties provided: "That the lessee shall in case of fire give immediate notice to the lessor, who shall thereupon cause the damage to be repaired forthwith; that if the premises be by the lessor deemed so damaged as to be unfit for occupancy, or if the lessor shall decide to rebuild, the lease shall cease and the rent be paid up to the time of the fire."

After the fire it took appellant several weeks to get an adjustment of the fire damage. During said time the question arose between Mr. Jester, the president of appellee, who was in charge of said building, and appellants Clark and Chinski, with reference to whether the building, by reason of said fire, was by lessor deemed so damaged as to be unfit for occupancy, or whether the lessor, appellee, had decided to rebuild and had requested appellants to move out of said building. The testimony relative to these issues was sharply drawn between Mr. Jester on the one side, and Mr. Clark and Mr. Chinski on the other. Mr. Clark testified that the damage occasioned by the fire was very bad by water being poured into the store; that the plastering was cracked and fell in a number of places; that the fire was practically all over the top of their store; that after the fire Mr. Jester let a contract to Mr. Moore to repair the building; and that Mr. Moore came to him and told him that he had the contract and that he (Clark) would have to move the

stock out of the building so that it could be repaired. He further testified that after he got his adjustment with the insurance company, Mr. Jester and Mr. Moore came to him and wanted to know what he was going to do, and that he told Mr. Jester he wanted to straighten up the stock and put on a sale, and that Mr. Jester told him he was not willing for the business to open in the condition in which it was in, except under the proviso that he (Clark) could do so at his own risk, and that if he (Clark) did so at his own risk, he could stay in the store until the holidays; that he and Mr. Jester agreed that he (Clark) would run the store until Christmas and then move the stock out and let Mr. Jester have the building to repair it; and that he (Clark) then went and leased another building where he could move his stock of goods after the holidays. He further testified that Mr. Moore, the contractor employed by Mr. Jester, told him he could not repair the building with the merchandise in there; that the plaster would come down and ruin the stock of goods. He further testified that either Mr. Moore or Mr. Jester told him to move his stock of goods out so he could fix the building.

Mr. Chinski testified that after the fire Mr. Jester asked him once or twice when they were going to get out, and that he told him they had made arrangements for a sale and that as soon as that was over they would move.

Mr. Jester testified, in effect, that he did not know until appellants were moving out that they were going to vacate the building; that they moved out over night. He further testified he did not know why appellants did move out of the building; that after the fire he had an expert plasterer to examine the building, who reported to him that it was not necessary to remove the plaster; that he did not recall having any kind of a conversation with Mr. Clark or Mr. Chinski in respect to the condition of the building; that he employed Mr. Moore, a contractor, to repair the building; that he did not recall Mr. Clark having talked to him about getting another building to move his stock into while the repairs were being made; that such a conversation might have occurred, but he did not remember it.

Appellants in their answer alleged that after the fire appellee told them that he deemed the building so damaged as to be unfit for occupancy and that he desired to rebuild and repair the premises, and requested them to vacate and remove from the premises so that he might rebuild, and advised and notified them that it would be unsafe and dangerous for them to remain in the property while same was being repaired, and that if they did remain during said time it would be at their own risk; that by reason of the fact that appellee did deem the building unfit for occupancy and demanded possession thereof, they were required to and did rent another building, and did move out of said building at appellee's request on the 27th of December, having made a two-year lease contract on the new building prior to the time they moved out of the building of appellee.

Appellee, for the first time in its amended pleading filed June 29, 1926, alleged that after appellant S. P. Clark, Inc., moved out of said building in December, 1924, it did, about April 1st, make an assignment to Vernon Hall, who had sold and disposed of all the stock of goods, fixtures, and furniture on which it had a lien, and by reason thereof the said Vernon Hall was both individually and as assignee liable for the amount of the unpaid rent.

In response to special issues submitted, the jury found that appellee, through Mr. Jester, did not after the fire deem the premises in question so damaged as to be unfit for occupancy, and further found that Mr. Jester after the fire did not notify appellant to vacate the premises. There were other issues submitted to and answered by the jury not necessary to more fully state.

The issues submitted to the jury were largely supported by the testimony of Mr. Jester, representing the landlord, on one side, and by Mr. Clark and Mr. Chinski, the tenants, on the other. If the jury believed the testimony of appellants Clark and Chinski as copied above, they would have answered the issues relative thereto in favor of appellants. On the other hand, if they believed Mr. Jester's testimony, they would have necessarily answered the issues as they did, in favor of appellee.

On cross-examination, over the objection of appellants that said testimony was irrelevant, immaterial, and prejudicial, appellee was permitted to ask Mr. Clark whether the assignment they made to Vernon Hall was the first time that he had made an assignment or settlement with his creditors, and in response to said question, over said objection, said witness testified: "I have never had but one adjustment with the insurance company before that one. I don't know how many Mr. Chinski has had. I never had a fire in the building or originating in the building in which my place was located. I said I had one other adjustment. I don't know how many Mr. Chinski had. Although I did not have to, I made an assignment a few months after I moved out of that building. One time before that I had made an assignment. I never made an assignment, I made a settlement." The witness Clark was further asked what amount his creditors got or received in the prior settlement or assignment, and over the objection of appellant that same was irrelevant, immaterial, and prejudicial, he was required to answer: "I think my creditors got thirty some odd cents on the dollar when I made the prior assignment." On cross-examination of appellant Chinski, over the objection of appellants that it was irrelevant, immaterial, and prejudicial, he was asked and required to answer the following question:

"Mr. Chinski, you have had a previous assignment or two, haven't you?" To which he answered: "I have not had a previous assignment or two. As to whether or not Davis, Johnson and Carter, with which firm Mr. Carter was connected, had a receiver appointed for a concern I was interested in in 1922, you let me state it to you, Judge. I will tell you that the only assignment I ever made was a settlement that I accepted while with the Specialty Shoe Company on Market Street. All the creditors accepted under that settlement but one creditor, and after that the company went into bankruptcy and the stock was sold out through the bankrupt court. I have never been concerned in any assignment except that one."

Appellee's counsel, during his argument to the jury, over the objection of appellants that same was inflammatory, was permitted to state to the jury that his client, Mr. Jester, had not made a settlement with his creditors for 30 cents on the dollar, but was always worth 100 cents on the dollar, and that the defendants (appellants) were in financial difficulties. Appellants, by their propositions 1 to 4 and 7 to 10, contend it was error for the trial court, over its objections urged, to permit appellee to introduce said testimony, and that said error was augmented by and made more harmful by the argument of appellee's counsel to the jury; their contention being that same was an improper way of impeaching the credibility of the witnesses Clark and Chinski, and that the evidence and argument were prejudicial and inflammatory. We sustain these propositions. Our courts have uniformly held that a witness cannot be impeached or discredited by irrelevant and immaterial matters. Unquestionably, the testimony objected to had no relevancy to the issues in controversy and could throw no light upon same. The only purpose for which said testimony could have been offered was to prejudice appellants in the minds of the jury, and where, as in this case, the parties were compelled to rely almost entirely upon their own testimony to establish their defense, it could not be said that it was harmless error to admit said testimony. Bain Peanut Co. v. Pinson (Tex. Com. App.) 294 S. W. 536, 537; G. C. & S. F. Ry. Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Kennedy v. I.-G. N. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 581; Burchill v. Hermsmeyer (Tex. Civ. App.) 230 S. W. 809; Jones v. Texas Electric Ry. (Tex. Civ. App.) 210 S. W. 749; Turner v. McKinney (Tex. Civ. App.) 182 S. W. 431. In Burchill v. Hermsmeyer, supra, it was held reversible error to ask a party to state if he had not named $10,000 as the consideration in a deed which he had executed, instead of naming the real consideration of $50,000, in order that he might save the stamp tax. In said opinion a large number of cases are cited and instances given where evidence on irrelevant and immaterial matters tending to discredit or impeach a witness was held reversible. In Bain Peanut Co. v. Pinson, supra, by the Commission of Appeals, the rule was stated: "Where improper testimony in its nature calculated to prejudice is permitted, the appellate court must presume that harm resulted therefrom, unless it affirmatively appears from the record that it did not. The same rule of law applies to the introduction of improper evidence over objection as is applicable to improper remarks of counsel in argument or misconduct of the jury. * * * Fairness is essential in all trials in the courts and no rule can interfere with the right of a litigant to a fair and impartial trial." The court in said opinion held that it was reversible error to require one of the plaintiffs in said case to testify that: "A Mr. Smith had stated to him that defendant had breached a similar contract which it had with another person and 'broke' him."

Appellants, by a number of propositions, complain of the action of the trial court in rendering judgment against appellant Vernon Hall as assignee or individually, and complain of that portion of the judgment which fixes and forecloses a landlord's and contract lien against the stock of merchandise and fixtures; appellants' contention being that the evidence did not authorize any part of these portions of the judgment. Appellee's mortgage was not of record. The testimony relative to Vernon Hall's connection with the property is very vague, indefinite, and unsatisfactory. Appellee alleged that S. P. Clark, Inc., assigned the stock of goods to Vernon Hall about April 1, 1925. The assignment, however, was not offered in evidence. Neither was there any effort made to show when Vernon Hall took possession of said goods. He was not made a party to the suit until June 29, 1926, and there is no definite proof that Vernon Hall had any connection therewith, except the one statement made by the witness S. P. Clark on cross-examination, when he testified: "This merchandise and furniture that we had in that building when we moved was turned over to Mr. Vernon Hall also, and he sold it and got $6600.00" The evidence does not show in what connection this testimony was elicited. Neither does it show when Vernon Hall got it, nor when or to whom he sold it, and it does not appear whether he sold it as the agent of S. P. Clark, Inc., or whether he had purchased same and then sold it as his own. In fact, the evidence in its entirety is silent with reference to said matters. There is no evidence in the record showing whether the assignment made by S. P. Clark, Inc., was a general assignment, or whether there were any creditors of said corporation, or any reason for an assignment being made. All of these questions, however, can and likely will be more fully developed on another trial. It does not therefore become necessary for us to, and we do not, determine whether there is sufficient evidence

to sustain the judgment against Vernon Hall either in his individual capacity or as assignee.

The other matters complained of by appellants will not likely arise on another trial.

For the errors indicated, the judgment of the trial court is reversed, and the cause remanded.